IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 01-20061

---

ROSS HILL; PAUL GRIMES;
CANATXX ENERGY VENTURES, INC.,

                              Plaintiffs-Appellees,

                    versus

G E POWER SYSTEMS, INC.; ET AL

                              Defendants,

G E CAPITAL CORPORATION,

                              Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Texas

---

February 11, 2002

Before REAVLEY, HIGGINBOTHAM, and PARKER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Canatxx Energy Ventures filed this suit against General Electric Power Systems, Inc. (GEPSI). Facing a demand for arbitration, Canatxx added General Electric Capital Corporation (GECC) as a defendant, with which it has no arbitration agreement. The amended complaint asserted intertwined claims against both defendants arising out of a complex financial venture. GECC appeals the refusal both to stay the suit against it pending Canatxx's arbitration with General Electric Power Systems and to order

1

Canatxx's suit against it to arbitration. We reverse the district court's refusal to stay the suit against GECC pending Canatxx's arbitration with GEPSI, but affirm its refusal to compel Canatxx to arbitrate its claims against GECC.

I

This dispute arises out of an agreement between Canatxx and GEPSI to build two power plants and a gas storage facility in the United Kingdom. In 1996, Canatxx and GEPSI entered into a Memorandum of Understanding to develop power generation facilities in Fleetwood, England and Anglesey, Wales and a gas storage project adjacent to the Fleetwood site. Under the terms of the Memorandum of Understanding, Canatxx Ventures was to develop the project while GEPSI would secure the financing. The arrangement set out in the memorandum included a confidentiality agreement. It recognized the right of each party to protect proprietary information related to the development project, and provided that all claims arising out of its performance would be governed by New York law, and that no one would acquire a right as a third party beneficiary. The agreement also named one of GECC's affiliates, GE Capital Limited, as the financial advisor to the project. GE Capital Limited also entered into an agreement with Canatxx, outlining its role in the enterprise. None of these agreements included an arbitration clause.

In April 1998, Canatxx, Fleetwood Power Limited, and GEPSI entered into a Termination Agreement that ended the Memorandum of

2

Understanding, allocating the assets and responsibilities resulting from the Fleetwood and Anglesey projects. GECC was not a party to the termination agreement. The parties again elected to employ New York law, and to submit any claims arising out of the Termination Agreement to arbitration. The Termination Agreement specifies that it "supersedes all prior agreements, discussions, and understandings" and also disallows any rights that might accrue to any third party beneficiary.

Canatxx alleges that it entered into the Termination Agreement because GECC and GEPSI conspired to force Canatxx to use an experimental turbine at one of its project sites, requiring Canatxx to cover the non-financed part of the turbine. Canatxx also alleges that GECC instructed GEPSI to withhold payments to Canatxx for development costs and instructed GE Capital Group, the financial advisor for the project, to withhold information from Canatxx and to stall financing of the project.

The underlying suit in this case was filed by Canatxx against GEPSI in November 1999. GEPSI moved to dismiss or stay pending arbitration, and one month later Canatxx amended its complaint to join GECC, which was not a party to the Termination Agreement. The district court stayed Canatxx's suit against GEPSI and ordered arbitration based upon the Termination Agreement, but denied GECC's motion to stay and compel arbitration.[1] This is an appeal of the

---

[1] The district court also granted GEPSI's motion to dismiss the claims of Ross Hill and Paul Grimes, officers of Canatxx,

3

denial of GECC's motion to stay and compel arbitration.

II

First, to our jurisdiction over GECC's appeal of the denial of the stay. GECC urges that we have jurisdiction under Section 16(a)(1) of the Federal Arbitration Act, providing for an interlocutory appeal of a denial of a stay under Section 3 of the FAA.[2] In order to invoke jurisdiction under Section 16(a)(1), however, Section 3 must apply to the claims.[3] In general, Section 3 only applies to parties to an agreement containing an arbitration clause.[4]

We have applied Section 3 to nonsignatories in two recent cases. In *Subway Equipment Leasing Corp. v. Forte*,[5] we applied Section 3 to nonsignatories who were affiliates of a signatory corporation.[6] Since the claims against the affiliates were based entirely on rights arising from the contract containing the arbitration provision, we concluded that litigation of the claims against the nonsignatory affiliates would have adversely affected

---

because they lacked standing to bring the suit in their individual capacity.

[2] 9 U.S.C. § 16(a)(1).

[3] *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001).

[4] *Id.*

[5] 169 F.3d 324 (5th Cir. 1999).

[6] *Id.* at 329.

4

the signatory's right to arbitration.[7] Likewise, in *Harvey v. Joyce*,[8] we applied Section 3 to a nonsignatory corporation whose potential liability arose from and was inseparable from the claims against its owner, who did sign an arbitration agreement.[9] In *Harvey* we also concluded that if the lawsuit against the nonsignatory was allowed to proceed, it would have a critical impact upon the arbitration.[10]

The principle relied upon in *Subway* and *Harvey* is not new. We have long held that if a suit against a nonsignatory is based upon the same operative facts and is inherently inseparable from the claims against a signatory, the trial court has discretion to grant a stay if the suit would undermine the arbitration proceedings and thwart the federal policy in favor of arbitration.[11] We had not found Section 3 to be applicable to nonsignatories before *Subway*, however.

Our decision in *Subway* can be justified by Section 3. Although it is axiomatic that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which

---

[7] *Id*.

[8] 199 F.3d 790 (5th Cir. 2000).

[9] *Id*. at 795.

[10] *Id*.

[11] *Sam Reisfield & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976).

he has not agreed so to submit,"[12] Section 3 does not grant us the authority to compel arbitration of a dispute, and we did not do so in *Subway.* It merely gives courts the power to stay proceedings pending the completion of arbitration. Moreover, while the plain language of Section 3 requires an "issue referable to arbitration under an *agreement in writing*,"[13] the allegations brought by the franchisees in *Subway* were "based entirely on the franchisees' rights under the D.A. contract."[14] Thus the determination of factual and legal issues related to the claims brought against the nonsignatories in *Subway* would be the subject of an arbitration proceeding between signatories to the arbitration agreement. A suit against a nonsignatory that is based upon the same operative facts and is inherently inseparable from the claims against a signatory will always contain "issue[s] referable to arbitration under an agreement in writing,"[15] and thus will satisfy the requirements of Section 16(a)(1). Taking into account the strong federal policy in favor of arbitration,[16] our application of Section 3 to

---

[12] *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 648 (1986) (*quoting Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960)).

[13] 9 U.S.C. § 3 (emphasis added).

[14] *Subway*, 169 F.3d at 329.

[15] 9 U.S.C. § 3.

[16] *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

nonsignatories in *Subway* and *Harvey* only prefers the preservation of the arbitration rights of the signatory defendant over the speedy resolution of claims against nonsignatories.

*Subway* and *Harvey* are similar to the facts before us insofar as Canatxx's claims against nonsignatory GECC are inherently inseparable from its claims against GEPSI. Canatxx's complaint makes identical claims against both defendants, and on appeal Canatxx argues that GECC and GEPSI acted in concert to sabotage its relationship with Canatxx. It also claims that GEPSI acted as an agent for GECC throughout the relationship. Indeed, Canatxx argues on appeal that GECC coerced Canatxx into signing the Termination Agreement with GEPSI that contains the arbitration clause and that the Termination Agreement was written to serve GECC's interests.

We are persuaded that Canatxx's claims against GECC are inseparable in any practical way from its claims against GEPSI. Permitting Canatxx's suit against GECC to go forward would undermine the arbitration proceedings between GEPSI and Canatxx, thereby thwarting the federal policy in favor of arbitration. Because §3 is applicable, we have jurisdiction to hear GECC's appeal pursuant to § 16(a)(1) of the FAA. We also hold that GECC is entitled to a stay pending arbitration of Canatxx's claims against GEPSI.

## III

Our task here would now be done if GECC sought only a stay

7

until Canatxx's arbitration with GEPSI was complete. GECC wants more. It argues that we should order Canatxx to arbitrate its claims against GECC, pointing to our recent decision in *Grigson v. Creative Artists Agency*.[17]

In *Grigson*, we held that "a non-signatory to a contract with an arbitration clause can compel arbitration under an equitable estoppel theory, including when the action is intertwined with, and dependent upon, that contract."[18] We identified two circumstances under which a nonsignatory can compel arbitration. First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.[19] Second, when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.[20] We stressed that this is not a rigid test, and that each case turns on its facts.[21]

*Grigson* also held that the decision to utilize equitable estoppel in this fashion is within the district court's discretion,

---

[17] 210 F.3d 524 (5th Cir. 2000).

[18] *Id.* at 527.

[19] *Id.*

[20] *Id.*

[21] *Id.*

8

and that we review only to determine whether it has been abused.[22] To constitute an abuse of discretion, the district court's decision must be either premised on an erroneous application of the law, or on an assessment of the evidence that is clearly erroneous.[23]

The first prong of the *Grigson* test is not met. The district court, in ordering arbitration of Canatxx's claims against GEPSI, found that they touch matters covered by the Termination Agreement based upon a broad construction of the arbitration clause. GECC embraces this broad sweep for the arbitration clause. The rub is that GECC did not sign it and "touching matters" is not the appropriate test here. GECC also argues that Canatxx's claims are dependent upon the Termination Agreement. This contention has more purchase. However *Grigson* holds that "equitable estoppel applies when the signatory to a written agreement containing an arbitration clause *must rely on the terms of the written agreement in asserting its claims against the nonsignatory*."[24] GECC stops short of asserting that Canatxx relies upon the express terms of the Termination Agreement in asserting its claims, and thus the first prong of the *Grigson* test is not met here.

*Grigson*'s second prong is met. That second circumstance is

---

[22] *Id*. at 528.

[23] *Id*.

[24] *Id.* at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (emphasis added).

9

"when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."[25] The complaint alleged that GECC and GEPSI worked in tandem to misappropriate Canatxx's trade secrets and to fraudulently induce it to contract with them. At the same time Canatxx is denying that its claims are intertwined with the Termination Agreement, it alleges interdependent and concerted misconduct by GECC and GEPSI.

"[T]he lynchpin for equitable estoppel is equity" and the point of applying it to compel arbitration is to prevent a situation that "would fly in the face of fairness."[26] We asked if its decision was "premised on an application of the law that is erroneous" or "an assessment of the evidence that is clearly erroneous."[27] By this measure the district court did not abuse its discretion. In sum, the district court is better equipped to make the call than this court, and we do not lightly override that discretion.

IV

We hold that GECC is entitled to a stay pending arbitration of Canatxx's claims against GEPSI and that the district court properly

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

exercised its discretion by refusing to compel Canatxx to arbitrate its claims against GECC. We REVERSE the district court's refusal to stay the suit pending arbitration, AFFIRM the district court's refusal to compel Canatxx to arbitrate with GECC, and REMAND for further proceedings consistent with this opinion.