**John Waymon BROWN, Russell Vance Buras, Larry Robert Hammond, and Michael Kirk Ross, Appellants,**

v.

**Leslie ANDERSON, Individually, and as Trustee for the Benefit of The Gregory Lloyd Gustavsen Trust, Appellees.**

**No. 09–02–359 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Jan. 28, 2003.

Decided March 6, 2003.

**246**

Stephen D. Bain, Michael "Tate" Barkley, Bain Law Firm, Sugar Land, Robert Alan York, Holman & Keeling, P.C., Houston, for appellants.

Karen D. Smith, Drucker, Rutledge, Ward & Smith, LLP, The Woodlands, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

In these consolidated proceedings,[1] John Waymon Brown, Russell Vance Buras, Larry Robert Hammond, and Michael Kirk Ross (appellants) complain of the trial court's denial of their motion to compel arbitration and stay proceedings which invoked the Texas Arbitration Act, TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–171.098 (Vernon Supp.2003). A trial court's order denying arbitration is subject to interlocutory appeal if the motion to compel arbitration sufficiently invokes the Texas Arbitration Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a) (Vernon Supp.2003). Because we find the trial court abused its discretion in denying appellants' motion to compel arbitration and stay proceedings, we reverse and remand the cause to the trial court.

The procedural facts of the cause are not seriously in dispute. Appellee, Leslie Anderson, individually and as trustee for The Gregory Lloyd Gustavsen Trust, (Anderson) began this lawsuit with her original petition filed on January 29, 2001, initially suing only Datacentric Communications, Corporation (Datacentric) for breach of contract. Anderson made appellants parties to the action on July 23, 2001. Appellants Brown, Buras,[2] and Ross made their appearance in the cause via their original answer filed on September 14, 2001. Appellant Hammond's initial appearance was not made until January 24, 2002, with the filing of his original answer. Anderson sought, and was granted, partial

summary judgment against Datacentric, with the remainder of her claims against the company severed out so that her claims against appellants could proceed. The severance order was signed by the trial court on February 28, 2002. Appellants' original motion to compel arbitration and stay proceedings was filed on July 19, 2002. The record further indicates that after filing their respective answers, appellants filed a variety of instruments, including request for jury trial, designation of expert witnesses, motion for leave to take deposition by written questions, and appellants' responses to Anderson's objections to discovery requests and to her motion for protective order.

Anderson urges two reasons for upholding the trial court's denial of appellants' motion to compel arbitration. First, Anderson contends because appellants were not signatories to the asset purchase agreement, which contained the arbitration provision, appellants "lack standing" to compel arbitration. Second, Anderson argues that even if appellants had the legal capacity to invoke the arbitration provision they waived their right to arbitrate the claims against them as they have substantially invoked the judicial process to Anderson's detriment.

 Texas courts favor arbitration agreements. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 268 (Tex.1992). Accordingly, any doubts regarding the scope of an arbitration agreement are resolved in favor of arbitration. *See Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944

---

1. It is not contested by either party that the Texas Arbitration Act applies in this proceeding. The prophylactic petition for writ of mandamus filed under the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16 (West 1999), is being dismissed by opinion today. *See In re John Waymon Brown, Russell Vance Buras, Larry Robert Hammond, and Michael Kirk Ross,* No. 09–02–386 CV, 2003 WL 833310 (Tex.App.-Beaumont March 6, 2003).

2. The original answer filed on September 14, 2001, refers to appellant Russell Vance Buras as "Russell Vance Burns." This mistake was corrected in later filings by appellants and by Buras's affidavit also appearing in the record.

(Tex.1996) (orig.proceeding). Whether arbitration is required is a matter of contract interpretation and a question of law for the court. *Emerald Texas, Inc. v. Peel,* 920 S.W.2d 398, 403 (Tex.App.-Houston [1st Dist.] 1996, no writ). A court deciding a motion to compel arbitration must determine whether the parties agreed to arbitrate, and, if so, the scope of the arbitration agreement. *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Longoria,* 783 S.W.2d 229, 230 (Tex.App.-Corpus Christi 1989, orig. proceeding). Therefore, two questions must be decided: (1) whether there was an agreement to arbitrate; (2) whether the agreement encompassed the claims asserted. If the court answers these two questions affirmatively, it must compel arbitration. *See Smith Barney Shearson, Inc. v. Finstad,* 888 S.W.2d 111, 114 (Tex.App.-Houston [1st Dist.] 1994, no writ).

## EXISTENCE AND SCOPE OF ARBITRATION PROVISION

■ The "Asset Purchase Agreement" appears of record and contains the arbitration provision in question. The dispute in this cause arose when Datacentric allegedly defaulted on certain promissory notes executed by Datacentric and payable to Anderson. The basic terms and amounts of the promissory notes are set out within the asset purchase agreement. Anderson contends in her lawsuit that prior to the execution of the asset purchase agreement, appellants engaged in the following:

> [R]epresented that DataCentric would pay the promissory notes on the dates due, had the present financial ability to do so and was a financially viable entity with a significant new [sic] worth. The Defendants did not disclose the fact that the company was losing substantial sums of money each month, was in significant debt, had essentially no available cash and was not financially viable as represented. Defendants also represented that they would pay the promissory notes and had the present financial ability to pay the notes. These affirmative representations and non-disclosure of fact were material misrepresentations. The misrepresentations were made with knowledge of their falsity or made recklessly without any knowledge of the truth and as a positive assertion. The affirmative misrepresentations and non-disclosure of facts was done with the intention that it should be acted upon by Plaintiff and so as to induce Plaintiff to sell the assets in FlexNet, Inc. and agree to accept the promissory notes as payment. . . .

The scope of the arbitration provision is contained in its first sentence, which reads: **"Section 9.8 Arbitration.** All disputes arising in connection with this Agreement or any breach or claimed breach thereof shall be settled by arbitration." Anderson characterizes her lawsuit against appellants as follows: "Pre-contract affirmative representations and non-disclosure of facts form the basis of Anderson's claims of fraud and negligent misrepresentation against the promoters of the agreement, Brown, Hammond, Buras and Ross." Additionally, Anderson likens appellants to virtual "strangers" to the asset purchase agreement and contends appellants' acts and/or omissions are founded in tort rather than contract. However, the sworn affidavits of each of the appellants indicate that at the time the asset purchase agreement was executed between Datacentric and Anderson for the sale of her company, FlexNet, Inc., appellants held positions of authority in Datacentric; Buras being Chief Operating Officer; Brown being Chief Financial Officer; Ross being President; and Hammond formerly being Chief Technology Officer and President. Fur-

thermore, appellant Michael Kirk Ross did indeed sign the asset purchase agreement as "President" of Datacentric.

■ To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of action asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001). We also note that parties to arbitration agreements cannot avoid arbitration by casting their claims in tort, rather than in contract. *See Acevedo Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir.1975). Anderson's factual allegations are that appellants fraudulently induced her into selling FlexNet to Datacentric by misrepresenting the fact that Datacentric could pay the full amounts of the promissory notes when due when in fact Datacentric could not financially do so. In other words, but for the alleged fraudulent misrepresentations by appellants to Anderson, she would not have agreed to sell FlexNet and would not have executed the asset purchase agreement. The Texas Supreme Court has held that defenses such as unconscionability, duress, fraudulent inducement, and revocation *that pertain to the execution of the entire contract* are subject to arbitration. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 551 (Tex.2002).

Furthermore, under the particular facts and circumstances evident in the record before us, we agree with appellants that they have "standing" to invoke the arbitration provision even though three out of the four appellants were not signatories to the asset purchase agreement. The seminal case here is *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir.), *cert. denied*, 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000). *Grigson* holds, *inter alia*, that in certain limited instances, pursuant to an equitable estoppel doctrine, a "non-signatory-to-an-arbitration-agreement-defendant" can compel arbitration against a signatory-plaintiff. *Id.* at 526. Relying on cases out of the Eleventh Circuit involving the "intertwined-claims" approach, the Fifth Circuit quoted the test for determining when non-signatories will be permitted to invoke an arbitration provision as set out in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999):

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.*

*Grigson*, 210 F.3d at 527. (internal citations and quotation marks omitted; emphasis added by *Grigson*).

In the instant case, as noted above, appellant Michael Kirk Ross signed the asset purchase agreement in his capacity as president of Datacentric. In her pleadings, Anderson lumps all four appellants together with regard to her fraud and negligent misrepresentation allegations. Where the causes of action against the non-signatory defendants are based upon the same operative facts and are inherently inseparable from the causes of action against the signatory-defendant, the signatory-plaintiff may not avoid arbitration if invoked by the non-signatory defendants. *See id.* at 528. In the instant case, we find the existence of a valid agreement to arbitrate is applicable to all four appellants, and the agreement to arbitrate encompasses Anderson's alleged claims against appellants.

## WAIVER

■ The standard for determining waiver of the right to arbitrate is the same under both the Texas Arbitration Act and Federal Arbitration Act. *See In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574–75 (Tex.1999) (waiver under federal act); *see also Turford v. Underwood,* 952 S.W.2d 641, 643 (Tex.App.-Beaumont 1997, orig. proceeding) (waiver under Texas law); *Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 931–32 (Tex.App.-Houston [1st Dist.] 1996, no writ) (waiver under the Texas and federal acts). Whether a party has waived its right to arbitrate presents a question of law that is reviewed *de novo.* *See Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 574. There is a strong presumption against finding that a party has waived its right to arbitrate and the burden to prove waiver is a heavy one. *See EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 89–90 (Tex.1996). Waiver will be found only if the party seeking arbitration "has substantially invoked the judicial process to its opponent's detriment." *In re Bruce Terminix Co.,* 988 S.W.2d 702, 704 (Tex.1998). Substantially invoking the judicial process will not waive a right to arbitration "unless the opposing party proves that it suffered prejudice as a result." *Id.; see also EZ Pawn Corp.,* 934 S.W.2d at 90. ("Delay does not necessarily demonstrate prejudice."); *Nationwide of Bryan, Inc. v. Dyer,* 969 S.W.2d 518, 522 (Tex.App.-Austin 1998, no pet.) ("there must be an independent showing of prejudice").

We have examined the various filed instruments contained in the clerk's record, the exhibits filed by both parties at the hearing on the motion to compel arbitration, and the pointed but courteous colloquy between counsel for the parties and the trial court at the hearing on the motion to compel. We cannot ignore the portion of the Supreme Court's opinion in *EZ Pawn* which cites to a number of Fifth Circuit cases finding no waiver of the right to arbitrate under facts indicating much greater participation in the judicial process by the party seeking arbitration than appears in the instant case. *See EZ Pawn Corp.,* 934 S.W.2d at 90. Indeed, the activities of the party requesting arbitration in *EZ Pawn* included answering the lawsuit, participating in a court-ordered telephonic docket control conference, sending the opposing party interrogatories and a request for production, noticing opposing party's deposition, and entering into an agreed order resetting the case for a later trial date than originally scheduled. *Id.* Nevertheless, the Supreme Court found the opposing party did not meet its burden to show it suffered prejudice. *Id.*

We cannot but sympathize with the trial court in the instant case when it made the following comment near the conclusion of the hearing:

THE COURT: The fact remains you've [Appellant's Counsel] come a long

way down the pike, for whatever reason. And you're now within a month and a half of the trial date. An order compelling arbitration is going to not be harmless to the plaintiffs in the case. And it sure seems like that something like this could have been done much earlier. Whether or not the law requires it to have been done earlier is a horse of a different odor. The possibility of it having been done is one thing. The requirement for it being done is a horse of a different odor, as I say.

As recognized by the trial court, the factual analyses and subsequent rulings by courts of superior jurisdiction are what must guide our decisions, not the wishes of individual jurists. For us as an intermediate appellate court, Texas Supreme Court precedent on this issue appears unmistakable. That the motion to compel was filed approximately ninety days before the set trial date, the fact that Anderson expended some amount of money for its lawsuit against appellants (as opposed to what Anderson spent in its suit against Datacentric), that a scheduling order existed, that appellants paid a jury fee, and that the extent of the discovery from Anderson to appellants consisted of Anderson's deposition and Anderson's designation of "experts" does not permit us to say that Anderson has met her burden of proof as to prejudice in light of established precedent to the contrary. We find the trial court abused its discretion in denying appellants' motion to compel arbitration and stay of proceedings. Appellants' lone issue is sustained. The trial court's order is reversed and the cause remanded to said court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

DON BURGESS, Justice filed a dissenting opinion.

DON BURGESS, Justice, dissenting.

I respectfully dissent. The majority holds the trial court abused his discretion on the issue of waiver. The Texas Supreme Court in *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992), guides us in this standard of review:

With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court. *See Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41–42 (Tex.1989) (holding that determination of discoverability under Tex.R.Civ.P. 166b (3)(d) was within discretion of trial court); *Johnson [v. Fourth Court of Appeals],* 700 S.W.2d [916,] at 918 [Tex. 1985] (holding that trial court was within discretion in granting a new trial "in the interest of justice and fairness"). The relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 917. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Johnson,* 700 S.W.2d at 918.

The majority relies upon *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87 (Tex. 1996), as a comparison of activity in determining waiver. In reviewing *EZ Pawn,* I find:

The record reveals very little activity in the case before EZPawn's arbitration demand. EZPawn answered the suit, participated in a court-ordered telephonic docket control conference, sent Gonzalez interrogatories and request for production, noticed his deposition, and entered into an agreed order resetting

the case for a later trial date than originally scheduled.

*EZ Pawn*, 934 S.W.2d at 90.

According to an affidavit filed on behalf of Ms. Anderson, in June 2001, the depositions of John Waymon Brown, Larry Robert Hammond, Russell Vance Buras and Michael Kirk Ross were taken without any objection or any reservation of rights under the arbitration agreement. In November 2001, Brown, Buras and Ross each responded to a request for production of documents; again without objection or any reservation of rights under the arbitration agreement. Each of the individual defendants answered interrogatories in March 2002; again without objection or any reservation of rights under the arbitration agreement. In April 2002, the defendants began their own discovery by requesting the depositions of Ms. Anderson, Bob Gustavsen and Rod Desroches. In June they noticed the depositions of Anderson and Gustavsen and took Ms. Anderson's deposition. Since that deposition, the defendants served: a request for disclosure, a Rule 11 agreement for extension of time to respond to a request for production, a first set of interrogatories and a request for production, a first request for admissions, two depositions on written questions, a notice to depose Rod Desroches, a designation of expert witnesses, an amended notice to take Desroches' deposition and a response to request for production.

The affidavit also avers the plaintiff had incurred legal expenses in excess of $63,000; which included expenses which would not have been allowed under arbitration procedures. Under the rules and procedures of the American Arbitration Association "the arbitrator may direct (i) the production of documents or other information, and (ii) the identification of any witnesses to be called." There is no provision for admissions, interrogatories or depositions.

The trial judge was within reason to determine the defendants had substantially invoked the judicial process prior to requesting arbitration and that this had prejudiced the plaintiff. I do not believe the trial judge abused his discretion in denying the arbitration demand. I would affirm the court below.