**Alton J. MEYER, Meyer Acquisition Corp., and Ford Motor Company, Appellants,**

**v.**

**WMCO–GP, L.L.C. and Bullock Motor Company, Appellees.**

No. 09–03–255 CV.

Court of Appeals of Texas, Beaumont.

Submitted Nov. 6, 2003.

Decided Jan. 15, 2004.

Billy M. Donley, Glen Shu, Keith Russell, Houston, Robert S. Morris, virginia Hammerle, Hammerle Finley, Denton, for appellants.

Darrin Walker, Law Office of Darrin Walker, Kingwood, Joe Scott Evans, Evans & Kitchens, Groveton, for appellees.

Before STEVE McKEITHEN, C.J., BURGESS and DAVID B. GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This is an interlocutory appeal of the trial court's denial of appellants' motions to stay litigation and to compel arbitration. Appellants are non-signatories of the con-

tract in dispute. For the reasons stated herein, the ruling of the trial court is affirmed.

### Factual Background as alleged in pleadings

Bullock Motor Company ("Bullock") operated a Ford dealership in Corrigan, Polk County, Texas, under the terms of a Ford Sales and Service Agreement ("Dealership Agreement") with Ford Motor Company ("Ford"). In September 2002, WMCO–GP, LLC ("WMCO") entered into an agreement with Bullock for the purchase and sale of the assets of the dealership ("Purchase and Sale Agreement"). The Dealership Agreement granted Ford a right of first refusal in the event Bullock desired to sell the dealership. That provision included the following:

> "The Company's Right of First Refusal under this subparagraph 24(b) may be assigned to any third party ("Assignee"). If there is an assignment, Company will guarantee full payment of the purchase price by the Assignee. The Company shall have the opportunity to discuss the terms of the Buy/Sell Agreement with any potential Assignee, as long as such information is treated confidentially."

In compliance with the Dealership Agreement, Bullock notified Ford of the pending agreement with WMCO. Ford subsequently notified Bullock that it would exercise its right of first refusal and assume the agreement in place of WMCO. The notice did not specifically designate an Assignee of Ford's interest, but it was signed by Alton J. Meyer as "Assignee." WMCO claimed that Ford forfeited its right of first refusal by failing to honor its obligation of confidentiality under the Sales and Service Agreement. Notwithstanding WMCO's objections, Ford and Alton J. Meyer compelled Bullock to sell its

assets to the recently incorporated Meyer Acquisition Corporation. In separate correspondence, Meyer also promised to reimburse WMCO its reasonable expenses, including attorney's fees, incurred prior to Ford's exercise of its right of first refusal. On or about December 13, 2002, Meyer Acquisition Corp. purchased the assets of Bullock, but failed to reimburse the expenses of WMCO as promised. WMCO alleged in its petition that Bullock was joined as a defendant only as a "necessary party" and that, "but for" the actions of the Meyers defendants and Ford, Bullock would have complied with the terms of the Purchase and Sale Agreement. Damages were sought from "Defendants."[1]

### Procedural History

WMCO–GP, LLC sued Alton J. Meyer, Meyer Acquisition Corporation, and Ford Motor Company: (1) alleging tortious interference with contract by the Meyer entities; (2) seeking a declaratory judgment that Ford's right of first refusal was void by reason of breach of confidentiality provisions in Ford's franchise agreement with Bullock; and (3) alleging a civil conspiracy by Ford and the Meyers, pursuant to TEX. REV.CIV. STAT. ANN. art. 4413(36), § 5.02(b)(3) (Vernon Supp.2003),[1] as well as attorney's fees, costs, and pre and post-judgment interest. The Meyer defendants and Ford moved, *inter alia*, to stay the litigation and to compel arbitration, contending that all WMCO's claims were subject to arbitration provisions in both the Dealership and Purchase and Sale Agreements.

### General Policy Favors Enforcement of Contractual Arbitration Provisions

As a general policy, both Federal and State courts favor arbitration provi-

---

**1.** *See* TEX. OCC.CODE ANN. § 2301.458 (Vernon 2004).

sions. The United States Supreme Court has held that the Federal Arbitration Act, as a matter of law, requires that any doubt concerning the scope of arbitrable issues under a contractual arbitration provision be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). *See also In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex.2002). Parties may provide by contract that State, rather than Federal, rules pertaining to arbitration will apply. In this case, appellants concede that the Texas, rather than the Federal, arbitration laws apply. TEX. CIV. PRAC. & REM.CODE ANN. § 171.098 (Vernon Supp.2004). Enforcing state rules of arbitration, according to the terms of the agreement, is fully consistent with the goals of the Federal Arbitration Act. *Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

█ While this policy directs courts to place arbitration provisions on an equal footing with other contractual provisions, it does not require parties to arbitrate when they have not agreed to do so. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

*Parties not signatories to a written arbitration agreement may nonetheless be required to submit a dispute to arbitration*

It is undisputed that the parties to the Purchase and Sale Agreement have no arbitrable dispute between them. Appellants, non-parties, contend they are entitled to invoke that contract's arbitration provision.

█ It is well settled that a written arbitration agreement may bind or be invoked by a non-signatory third party utilizing ordinary principles of contract and agency law. *Bridas S.A.P.I.C., et al. v. Gov't of Turkmenistan*, 345 F.3d 347, 355–56 (5th Cir.2003); *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194, 195 (3rd Cir.2001). Ford and the Meyers have relied upon the theory of equitable estoppel in contending that the lawsuit filed against them by WMOC is subject to arbitration.[2]

█ In determining whether a contractual arbitration provision covers a claim, we focus on the factual allegations of the pleadings, not the legal theories advanced. Arbitration may not be avoided by simply casting claims as torts, rather than contracts. *Brown v. Anderson*, 102 S.W.3d 245, 249 (Tex.App.-Beaumont 2003, pet. denied). In *Brown*, this Court relied on the Fifth Circuit opinion in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir.), *cert. denied*, 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000), in holding that there are "certain limited instances, pursuant to an equitable estoppel doctrine" in which a non-signatory can compel arbitration against a signatory-plaintiff. Equitable estoppel is an appropriate basis for allowing a non-signatory to compel arbitration in two different circumstances: (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory; and (2) when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted

---

**2.** Five legal theories other than equitable estoppel have been recognized as bases for binding a non-signatory to an arbitration provision in a contract: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; 5) estoppel; and 6) third-party beneficiary. *Bridas S.A.P.I.C.*, 345 F.3d at 355–56.

misconduct by both the non-signatory and one or more of the signatories to the contract. *Brown,* 102 S.W.3d at 249 (citing *Grigson,* 210 F.3d at 527). In *Brown,* plaintiff sued a corporation for breach of an asset purchase agreement between the two of them. Plaintiff later added as defendants certain individuals, not signatories of the agreement, based upon claims sounding in tort. *Id.* at 247–49. The individual defendants moved to compel arbitration under a provision of the asset purchase agreement. Based upon a theory of equitable estoppel as espoused in *Grigson,* this Court held that: "Where the causes of action against the non-signatory defendants are based upon the same operative facts and are inherently inseparable from the causes of action against the signatory-defendant, the signatory-plaintiff may not avoid arbitration if invoked by the non-signatory defendants." *Id.* at 250.

■ The Fifth Circuit adopted the approach taken by the Eleventh Circuit in *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942 (11th Cir.1999) quoting from page 947, finding two circumstances in which equitable estoppel would apply to bind a non-signatory to an arbitration clause: one, when the signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory, and two, when the signatory raises allegations of "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Grigson,* 210 F.3d at 527. The Court noted that the "lynchpin for equitable estoppel is equity-fairness ..." and that a signatory may not " 'have it both ways,' " that is, hold a non-signatory liable pursuant to duties under a contract containing an arbitration clause, but deny the applicability of the arbitration clause because defendant is a non-signatory. *Id.* at 528. The review of a trial court's determination to compel arbitration or stay litigation pending arbitration is under the abuse of discretion standard; i.e., to constitute reversible error, there must be an erroneous application of the law, or an assessment of evidence that is clearly erroneous. *Id.*

In cases subsequent to *Grigson,* the Fifth Circuit has clarified and set parameters on its holding regarding equitable estoppel. In *Hill v. G.E. Power Sys., Inc.,* 282 F.3d 343 (5th Cir.2002), the court held, *inter alia,* that under the first prong of *Grigson,* equitable estoppel binds a non-signatory to an arbitration clause only when the signatory to the written agreement *"must rely on the terms of the written agreement in asserting its claims against the non-signatory."* It is not sufficient that the plaintiff's claims "touch matters concerning the agreement" or that the claims are "dependent upon" the agreement. *Id.* at 348–49 (emphasis by the court). In *Bridas S.A.P.I.C. v. Gov't of Turkmenistan, supra,* the court noted that equitable estoppel is but one of six ways under general principles of law in which a non-signatory may be bound by a written agreement to arbitrate. *Id.* at 355–56. The court then stated that simply because claims against a signatory and a non-signatory are inextricably intertwined is not in and of itself sufficient to justify application of equitable estoppel. The opinion recognized that this would be an "expanded version" of equitable estoppel that would threaten to overwhelm the fundamental premise that a party cannot be forced to arbitrate without agreeing to do so. *Id.* at 361. The court held that *Grigson* estoppel applies only to prevent a signatory from avoiding arbitration with a non-signatory when the issues a non-signatory seeks to resolve in arbitration are intertwined with the agreement that the estopped party has signed. *Id.*

There are a number of appellate court opinions addressing coverage and scope issues of arbitration provisions in disputes involving relationships similar to the case herein, such as distributorship, license, and franchise agreements. One common factor considered is the language of the arbitration provision itself. For example, in *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34 (5th Cir.1990), Neal purchased six Hardee's franchise restaurant locations in the Corpus Christi area. Prior to commencing operations, he signed separate agreements with Hardee's: an agreement in which he purchased the real estate, buildings and personal property required to open the restaurants, and six individual license or franchise agreements, authorizing Neal to operate the restaurants using the Hardee's trademark and system of operations. *Id.* at 36. The purchase agreement did not contain an arbitration clause, *Id.* at 37, but each of the license agreements contained the following provision (or one substantially similar): "Except as expressly provided to the contrary in this Agreement, the parties agree that any and all disputes between them, and any claim by either party that cannot be amicably settled, shall be determined solely and exclusively by arbitration...." *Id.* at 36. When the restaurants turned out not to be as profitable as Neal would have liked, he sued Hardee's for fraud. Hardee's moved to compel arbitration, based on the provisions in the license agreements. Neal responded that his claims were solely under the purchase agreement, which had no arbitration clause. *Id.* at 36–37. The Fifth Circuit held that the license agreements were the "keystone" of the business arrangements between the parties, and contained broad language in the arbitration provision (including "any and all disputes"). "Recognizing that the License Agreements were the heart of their deal, it is logical that the parties would have ex-

pressed their intent to arbitrate all of their disputes in a provision in those agreements. We hold that when the parties included a broad arbitration clause in the essential License Agreements covering 'any and all disputes,' they intended the clause to reach all aspects of the parties' relationship including the purchase of the physical properties." *Id.* at 38. In *In re Pennzoil Co. and Pennzoil Products Co.,* 30 S.W.3d 494 (Tex.App.-San Antonio 2000, orig. proceeding), Arnold had a non-exclusive distributorship agreement to distribute Pennzoil products in an eighteen county area. As was required by the agreement, Pennzoil gave sixty days' notice that it intended to terminate its business relationship with Arnold. Pennzoil later contracted with another dealer to become the authorized Pennzoil dealer in the same area. *Id.* at 497. Arnold sued the new distributor and Pennzoil for tortious interference with contract, civil conspiracy, and tortious interference with prospective business relationships. The petition alleged that a Pennzoil manager and the successor entity engaged in activity calculated to induce Arnold's customers to start buying from the successor and undercut Arnold's sales in the area, causing Pennzoil to terminate its agreement. The distributorship agreement included the following provision: "Any controversy or claim arising out of or relating to this Agreement, its performance or the breach thereof, shall be settled by arbitration ..." *Id.* at 498–99, and Pennzoil moved to compel arbitration. The San Antonio Court held that Pennzoil was entitled to invoke the arbitration clause because the dispute fell within the broad "relates to" language and the alleged tortious actions of Pennzoil (a signatory) and the new distributor (a non-signatory) were "factually interwoven" with the distributorship agreement and its performance. *Id.* at 499.

The Fifth Circuit has characterized arbitration clauses as "broad" or "narrow." *See Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.,* 981 F.2d 752, 754–55 (5th Cir.1993). *See also Threadgill v. Orleans Parish Sch. Bd.,* 2003 WL 21244009, at *2, 2003 U.S. Dist. LEXIS 8991 at *7 (E.D.La.2003)(If the clause is narrow, the matter should not be subject to arbitration unless the court determines the dispute falls within the clause).

### *Is WMOC equitably estopped from denying that its claims are subject to arbitration?*

■ We should point out that although the motions for stay filed in the trial court rely on the arbitration provisions of both the Purchase and Sale *and* Dealership Agreements, Ford, in its brief, concedes that WMCO would not be required to arbitrate under the arbitration clause of the Dealership Agreement. Therefore, the factual allegations of WMCO's pleadings will be reviewed only as to whether they would be arbitrable under the arbitration clause of the Purchase and Sale Agreement.

■ The arbitration clause in the Purchase and Sale Agreement requires arbitration for "Any controversy *between the parties* to this Agreement *involving the construction or application of any of the terms, covenants, or conditions* of this Agreement, shall *on the written request of one party served on the other,* be submitted to binding arbitration, ..." (emphasis added). As noted above, none of the allegations require that terms, covenants or conditions of the Purchase and Sale Agreement be construed or applied. While this action does, perhaps, "touch upon" and "relate to" the Purchase and Sale Agreement, and might make the issues raised arbitrable under an expansive arbitration

clause as illustrated above, the issues in this case are not between the parties to the Purchase and Sale Agreement and do not require the court or a jury to construe or apply any of the terms, covenants, or conditions of the Purchase and Sale Agreement. The law of contracts is used to determine the scope of an agreement to arbitrate. *In re Tenet Healthcare, Ltd.,* 84 S.W.3d 760, 767 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). The interpretation of a written contract is a matter of determining the intention of the parties, as expressed or apparent in the writing. *New Caney I.S.D. v. Burnham AutoCountry, Inc.,* 30 S.W.3d 534, 539 (Tex.App.-Texarkana 2000, pet. denied). To place an expansive interpretation on a narrow arbitration provision would, we think, be contrary to the parties manifest intent when they entered into this Agreement. Further, if the language employed by contracting parties here is not sufficient to limit arbitration, it would be hard for us to imagine what language would suffice. Neither do the allegations and claims raised by WMCO fulfill the first prong of *Grigson,* i.e., plaintiff is not relying on the terms of the Purchase and Sale Agreement in asserting its claims against the non-signatories, Meyer and Ford. *Grigson,* 210 F.3d at 527. *Cf. Hill v. G.E. Power Sys., Inc.,* 282 F.3d at 348–49. Rather, the issues pertain to the exercise by Ford of its right of first refusal in the Dealership Agreement, whose arbitration provision Ford concedes does not cover WMCO, *see supra,* and the alleged promise to pay expenses to WMCO, which is based on a letter from counsel for Meyer, and not in either agreement.

The second prong of *Grigson* would require the application of equitable estoppel when the signatory to the contract alleges "substantially interdependent and concerted misconduct by both the non-signatory

and one or more of the signatories to the contract." *Hill,* 282 F.3d at 348. Unlike the cases above, defendant Bullock is not alleged to have breached any legal duties to WMCO. There are no intertwining claims against signatory and non-signatory Defendants. All claims are against non-signatories, arising not out of the contract containing the applicable arbitration provision, but under a separate contract, whose arbitration provision is, admittedly, not applicable to WMCO. WMCO is not "having it both ways," i.e., not seeking to enforce rights under an agreement with an arbitration provision without going through arbitration. The lawsuit is solely against non-parties to its buy-sell agreement, who allegedly improperly exercised Ford's right of first refusal to prevent Bullock from fulfilling its obligation to sell its dealership to WMOC. *See generally Texas State Optical, Inc. v. Wiggins,* 882 S.W.2d 8 (Tex.App.-Houston [1st Dist.] 1994, no pet.). We cannot stretch the *Grigson* case, or the general policy favoring arbitration of disputes, to cover this situation. We find that the trial court did not abuse its discretion in refusing to stay the litigation or compel arbitration. The judgment of the trial court is affirmed.

AFFIRMED.

DAVID B. GAULTNEY, Justice, dissented and filed opinion.

DAVID B. GAULTNEY, Justice, dissenting.

I respectfully dissent. At the core of this dispute is Ford's exercise of its right of first refusal, a right established in the Dealership Agreement, to which WMCO was not a signatory, and a right set forth in the Purchase and Sale Agreement, to which WMCO was a signatory. The two agreements—and this lawsuit—are interlocked through this contractual right of first refusal. To assert its claims, WMCO must rely on the terms of the Purchase and Sale Agreement; its complaint must be based on rights conveyed to it through the Agreement. The Purchase and Sale Agreement contains an arbitration provision. Recently we said that when a signatory to a written agreement containing an arbitration provision must rely on the terms of the written agreement in asserting its claim against a nonsignatory, the nonsignatory may compel arbitration of the claim. *See Brown v. Anderson,* 102 S.W.3d 245, 249–50 (Tex.App.-Beaumont 2003, pet. denied). The principle applies here. I would compel arbitration of the claim.