IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00321-CV

 

Wiley Sam Dennis,

                                                                      Appellant

 v.

 

College Station
 Hospital, L.P. d/b/a

College Station
 Medical Center,

                                                                      Appellee

 

 

 



From the 85th District Court

Brazos County, Texas

Trial Court # 02-000198-CV

 



Opinion



 

          Wiley
Sam Dennis appeals the court’s decision to submit only his counterclaims
against College Station
 Hospital to arbitration
and the court’s granting of the Hospital’s summary judgment motion on its claim
against him.  Dennis contends in five
issues that the court erred by: (1) failing to submit the parties’ entire
dispute to arbitration; (2) granting the Hospital’s summary judgment motion;
(3) awarding attorney’s fees to the Hospital; (4) refusing to permit him to
provide additional evidence after the summary judgment hearing; and (5) failing
to permit him to present several post-hearing motions.  Because the court should have submitted the
entire dispute to arbitration, we will reverse and render.

          The
Hospital recruited Dennis to help it begin a cancer treatment center.  The Hospital and Dennis signed a Recruiting
Agreement in June 2000.  The effective
date of the Recruiting Agreement was August 1, 2000.  In an
addendum to this agreement, the Hospital guaranteed that Dennis would have
gross monthly cash receipts of $29,166.66 during the first twelve months of the
contract term, and the Hospital agreed to loan Dennis on a monthly basis any
sums less than the guaranteed amount. 
The Hospital further agreed to forgive and cancel 1/36 of the sums lent
for every month after the first year Dennis continued a full-time practice in
the community and remained a medical staff member in good standing with the
Hospital.

          The
Hospital also executed a Professional Services Agreement with College Station
Radiation Oncology Associates, P.A. which took effect on August 1, 2000.[1]  The Professional Services Agreement
essentially provided that Dennis would be the exclusive provider of therapeutic
radiation oncology services for the Hospital during the four-year term of the
contract.  The Professional Services
Agreement has the following arbitration clause:

          Alternate
Dispute Resolution.  The parties
firmly desire to resolve all disputes arising hereunder without resort to
litigation in order to protect their respective business reputations and the
confidential nature of certain aspects of their relationship.  Accordingly, any controversy or claim arising
out of or relating to this Agreement, or the breach thereof, shall be settled
by arbitration administered by the American Arbitration Association in
accordance with its Commercial Arbitration Rules, and judgment on the award
rendered by the arbitrator or arbitrators shall be binding and conclusive on
the parties, and shall be kept confidential by the parties to the greatest extent
possible.  No disclosure of the award
shall be made by the parties except as required by the law or as necessary or
appropriate to effectuate the terms thereof.

 

          A
dispute arose between Dennis and the Hospital, and he resigned in December 2001.  The Hospital demanded that Dennis repay the
money it had loaned him under the terms of the gross receipts guarantee.  Dennis refused, and the Hospital filed suit against
him for breach of the Recruiting Agreement. 
Dennis filed a countersuit alleging breach of contract, fraud, and
fraudulent inducement.  The Hospital
contends (and Dennis does not dispute) that Dennis’s counterclaim for breach of
contract arises under the Professional Services Agreement.

          The
parties filed summary judgment motions, then the Hospital filed a motion to
compel arbitration with regard to “the arbitral claims” at issue.  The Hospital contended in the motion to
compel arbitration that Dennis’s counterclaims arose under or related to the
Professional Services Agreement.  Dennis
did not file a response to the motion to compel arbitration.

          The
court conducted a hearing on the summary judgment motions and the motion to
compel arbitration, then took the motions under advisement for several months.  The court granted the Hospital’s summary
judgment motion on its contract claim under the Recruiting Agreement and
ordered that Dennis’s counterclaims be arbitrated.

          Dennis
contends in his first issue that the court erred by failing to submit the
entire dispute to arbitration.

          In
cases governed by the Texas
arbitration statutes,[2]
there are two issues to resolve: (1) whether the parties have a valid
arbitration agreement and (2) whether the claims at issue lie within the scope
of that agreement.  Brown v. Anderson, 102 S.W.3d 245, 247-48 (Tex. App.—Beaumont 2003,
pet. denied); Menna v. Romero, 48
S.W.3d 247, 250 (Tex. App.—San Antonio 2001, pet. dism’d w.o.j.); Leander Cut Stone Co. v. Brazos Masonry,
Inc., 987 S.W.2d 638, 640 (Tex. App.—Waco 1999, no pet.).

          The
only issue presented in this appeal is whether the entirety of the parties’
dispute lies within the scope of the arbitration clause contained in the
Professional Services Agreement.  This is
a question of law which we review de novo.  See
Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd., 147 S.W.3d 507, 512 (Tex. App.—San Antonio 2004,
no pet.); Leander Cut Stone, 987
S.W.2d at 640.

          The
law favors arbitration agreements.  See Associated Glass, 147 S.W.3d at 512;
Perlstein v. D. Steller 3, Ltd., 109
S.W.3d 36, 39 (Tex.
App.—Corpus Christi 2003, pet. denied); Brown,
102 S.W.3d at 247.  Thus, we must resolve
any doubts about the scope of an arbitration agreement in favor of
arbitration.  Id.  “The policy favoring enforcement of arbitration
provisions is so compelling that a court should not deny arbitration ‘unless it
can be said with positive assurance that an arbitration clause is not
susceptible of an interpretation which would cover the dispute at issue.’”  Perlstein,
109 S.W.3d at 40 (quoting Prudential
Secs., Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995) (original
proceeding) (per curiam)); accord Dewey
v. Wegner, 138 S.W.3d 591, 602 (Tex. App.—Houston [14th Dist.] 2004, no pet.); Loy v. Harter, 128 S.W.3d 397, 403 (Tex.
App.—Texarkana 2004, pet. denied); Pennzoil
Co. v. Arnold Oil Co., 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no
pet.).

          When
we determine whether a particular claim lies within the scope of an arbitration
agreement, we examine the terms of the arbitration agreement and the factual
allegations pertinent to the claim.  See In re FirstMerit Bank, N.A., 52
S.W.3d 749, 754 (Tex.
2001); Loy, 128 S.W.3d at 402; Pennzoil Co., 30 S.W.3d at 498; Leander Cut Stone, 987 S.W.2d at 640.  “Generally, if the facts alleged ‘touch
matters,’ have a ‘significant relationship’ to, are ‘inextricably enmeshed’
with, or are ‘factually intertwined’ with the contract that is subject to the
arbitration agreement, the claim will be arbitrable.”  Pennzoil
Co., 30 S.W.3d at 498 (citing Hou-Scape,
Inc. v. Lloyd, 945 S.W.2d 202, 205-06 (Tex. App.—Houston [1st Dist.] 1997,
orig. proceeding)); accord AutoNation USA
Corp. v. Leroy, 105 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

          Other
intermediate courts have required a closer relationship between the contract
containing the arbitration clause and the other claims at issue.  Thus, it has been held:

          If
[another] claim is so interwoven with the contract that it cannot stand alone,
it falls within the scope of an agreement to arbitrate; if, on the other hand, [the
other] claim is completely independent of the contract and could be maintained
without reference to the contract, it falls outside the scope of an agreement
to arbitrate.

 

Associated
Glass, 147 S.W.3d at 513; accord Loy, 128 S.W.3d at 403; Valero Energy Corp. v. Teco Pipeline Co.,
2 S.W.3d 576, 590 (Tex. App.—Houston
[14th Dist.] 1999, no pet.); Valero
Energy Corp. v. Wagner & Brown, II, 777 S.W.2d 564, 566 (Tex. App.—El
Paso 1989, writ denied).[3]

          We
believe that the broader relationship test articulated by the court in the Pennzoil case is more appropriate.  To begin with, the term used in many
arbitration agreements and in the agreement at issue here is the term
“related”—not “interrelated,” “interwoven,” or “interdependent.”  In addition, because of the strong presumption
in favor of arbitration, most courts agree that an arbitration request should
not be denied “unless it can be said with
positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute
at issue.”  Prudential Secs., 909 S.W.2d at 900; Dewey, 138 S.W.3d at 602; Perlstein, 109 S.W.3d at 40; Pennzoil Co., 30 S.W.3d at 498.

          Here,
the Hospital contends that the trial court properly declined to order the arbitration
of its contract claim under the Recruiting Agreement because: (1) no party
asked the court to refer this claim to arbitration; (2) the contracts are
independent of each other; and (3) Dennis is not a party to the Professional
Services Agreement.  We disagree.

          When
a party calls the trial court’s attention to the existence of an arbitration
agreement, the court must determine the scope of the arbitration
agreement.  Brown, 102 S.W.3d at 248; Menna,
48 S.W.3d at 250; see also Tex. Civ. Prac. & Rem. Code Ann. § 171.025
(Vernon Supp.
2004–2005) (trial court must stay part of proceeding involving claims covered
by arbitration agreement when application for arbitration made or arbitration
ordered).  Thus, we hold that a party
cannot limit the claims which will be submitted to arbitration by failing to
include certain claims within its motion to compel arbitration.  Cf. In
re Serv. Corp. Intl., 85 S.W.3d 171, 174 (Tex. 2002) (“There is a strong presumption
against waiver” of arbitration); Associated
Glass, 147 S.W.3d at 514 (same).

          We
also note that Dennis argued at the hearing on the Hospital’s motion to compel
that the agreements were related and should both be subject to
arbitration.  Accordingly, we reject the
Hospital’s contention that arbitration should be limited to Dennis’s claims
under the Professional Services Agreement because the Hospital’s motion was so
limited.

          As
quoted above, the Professional Services Agreement requires the arbitration of
“any controversy or claim arising out of or relating to this Agreement.”  Therefore, we must determine whether the
factual allegations of the Hospital’s claim for breach of the Recruiting
Agreement “‘touch matters,’ have a ‘significant relationship’ to, are ‘inextricably
enmeshed’ with, or are ‘factually intertwined’ with the” Professional Services
Agreement.  Pennzoil Co., 30 S.W.3d at 498; accord
Hou-Scape, 945 S.W.2d at 205-06.

          The
contracts at issue are contemporaneous, at least in terms of their effective
dates.  The contracts refer to each
other.  Both contracts undoubtedly relate
to Dennis’s service as a therapeutic radiation oncologist for the Hospital.

          The
Hospital focuses primarily on the fact that the parties’ rights under these
contracts could be litigated separately. 
See Associated Glass, 147
S.W.3d at 513; Loy, 128 S.W.3d at
403; Teco Pipeline Co., 2 S.W.3d at
590; Wagner & Brown, 777 S.W.2d at
566.  However, the same could be said of
virtually any two legal theories of recovery. 
Therefore, because of the strong presumption favoring arbitration and
because the two agreements at issue are closely related, we hold that that the
arbitration clause in the Professional Services Agreement is broad enough in
scope to include the Hospital’s claim under the Recruiting Agreement.  See
Associated Glass, 147 S.W.3d at 513-14; Dewey,
138 S.W.3d at 602-03; AutoNation USA,
105 S.W.3d at 196-98; Pennzoil Co.,
30 S.W.3d at 498-99; In re Conseco Fin.
Servicing Corp., 19 S.W.3d 562, 570 (Tex. App.—Waco 2000, orig. proceeding);
Teco Pipeline Co., 2 S.W.3d at 590-91;
Hou-Scape, 945 S.W.2d at 206.

          The
Professional Services Agreement was executed by the Hospital and by College
Station Radiation Oncology Associates, P.A. 
Thus, the Hospital argues that any claims it has against Dennis in his
individual capacity are not subject to arbitration under an agreement the
Hospital signed with the professional association.

          Claims
against a nonsignatory to an arbitration agreement are subject to arbitration
if the claims against the nonsignatory “are based on the same operative facts
and are inherently inseparable” from claims which could be asserted against a
signatory to the agreement.  Teco Pipeline Co., 2 S.W.3d at 593; accord In re Educ. Mgt. Corp., 14 S.W.3d
418, 424-25 (Tex. App.—Houston
[14th Dist.] 2000, orig. proceeding); Carlin
v. 3V Inc., 928 S.W.2d 291, 297 (Tex. App.—Houston [14th Dist.] 1996, no
writ); Merrill Lynch, Pierce, Fenner
& Smith v. Eddings, 838 S.W.2d 874, 879 (Tex. App.—Waco 1992, writ
denied); cf. In re Kellogg Brown &
Root, Inc., 48 Tex. Sup. Ct. J. 678, 683, 2005 Tex.
LEXIS 393, at *23 (Tex.
May 20, 2005) (orig. proceeding) (nonsignatory plaintiff may be compelled to
arbitrate a claim “only if it seeks, through the claim, to derive a direct
benefit from the contract containing the arbitration provision”).

          Here,
the Hospital’s contract claim against Dennis satisfies this test.  Therefore, the Hospital’s claim against
Dennis for breach of the Recruiting Agreement is subject to the arbitration
clause contained in the Professional Services Agreement.

          Accordingly,
we sustain Dennis’s first issue.  We need
not address the remainder of the issues presented.

We reverse the judgment and remand this cause to
the trial court with instructions to stay all further proceedings in that court
and order the parties to arbitrate their claims in accordance with the arbitration
clause contained in the Professional Services Agreement.  See
Associated Glass, 147 S.W.3d at 514; Williams
Indus., Inc. v. Earth Dev. Sys. Corp., 110
S.W.3d 131, 142 (Tex. App.—Houston [1st Dist.] 2003, no pet.); Teco Pipeline Co., 2 S.W.3d at 595.

 

FELIPE REYNA

Justice

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

Reversed and rendered

Opinion delivered and filed June 1, 2005

[CV06]








 











    [1]       The Hospital’s representative signed the
Professional Services Agreement in November 2000 and Dennis signed it on behalf
of College Station Radiation Oncology Associates in March 2001.  Nevertheless, the agreement expressly
provided that it took effect in August 2000 regardless of when it was signed.





    [2]       The Texas statutes governing arbitration of disputes
(commonly referred to as the Texas Arbitration Act) are found in Chapter 171 of
the Civil Practice and Remedies Code.  See Tex.
Civ. Prac. & Rem. Code Ann. §§ 171.001-171.098 (Vernon Supp. 2004–2005).





    [3]       Although the San
 Antonio and Houston
(14th) Courts of Appeals quoted the broader language set out in the paragraph
above, these courts also referred to the more restrictive language set out in
this paragraph.  See AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 195 (Tex. App.—Houston
[14th Dist.] 2003, no pet.) (citing
Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 498 (Tex. App.—San Antonio
2000, no pet.) (citing Fridl v. Cook,
908 S.W.2d 507, 511 (Tex. App.—El Paso 1995, writ dism’d w.o.j.))).  The more restrictive language appears to find
its origin in the 1989 decision of the El Paso Court of Appeals in Valero Energy Corp. v. Wagner & Brown,
II.  777 S.W.2d 564, 566 (Tex.
App.—El Paso 1989, writ denied).