Affirmed and Memorandum Opinion filed August 10, 2006








Affirmed and Memorandum Opinion filed August 10, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00212-CV

_______________

 

SKYLEASING, LLC, Appellant

 

V.

 

TEJAS AVCO INC., D/B/A HOUSTON SOUTHWEST AIRPORT,
Appellee

                                                                                                                                              
 

On Appeal from the 240th District Court

Fort Bend County, Texas

Trial Court Cause No. 04‑CV‑139830

                                                                                                                                              
 

 

M E M O R A N D U M   O P I N I O N

Appellant,
Skyleasing, L.L.C., appeals from an order denying its motion to compel
arbitration of its underlying dispute with appellee, Tejas Avco Inc. d/b/a
Houston Southwest Airport (Athe Airport@).  Although Skyleasing and the Airport have no agreement to
arbitrate, Skyleasing contends that the trial court abused its discretion by
refusing to apply the equitable estoppel doctrine to compel arbitration.  We
affirm.








I.  Background

The
Airport leased space at its facility to ADS Aviation, Inc. (AADS@) pursuant to a written lease. 
Charles Cohen, president of ADS, guaranteed performance of ADS=s obligations under the lease.  The
lease provided that the Airport would sell fuel to ADS at Aflight school@ prices.  The lease also authorized
ADS to sublease hangar space.  ADS entered into a separate agreement with
Skyleasing whereby ADS housed airplanes owned by Skyleasing at the Airport=s facility.  Skyleasing had no
contract with the Airport.  However, at ADS=s request, the Airport provided fuel
for the airplanes.

The
Airport eventually declared a default on the lease.  Allegedly, ADS failed to
make all the lease and fuel payments.  The Airport also filed AMechanic=s and Materialman=s@ liens on the planes owned by
Skyleasing.  In response, Skyleasing filed a AMotion for Judicial Review of
Documentation Purporting to Create a Lien@ contending the document purporting
to create a lien on one plane is fraudulent.

The
Airport then filed suit against ADS, Cohen, and Skyleasing.[1] 
In its live petition, the Airport alleges ADS and Cohen breached the lease by
failing to make lease and fuel payments.  The Airport asserts a quantum meruit
claim against Skyleasing for the reasonable value of the fuel and storage
services provided to its planes.  The Airport also requested a temporary injunction
to prevent ADS and Skyleasing from transferring or selling the planes. 
Apparently, Skyleasing was in the process of selling some of the planes when
the Airport filed suit.  The trial court consolidated Skyleasing=s AMotion for Judicial Review of
Documentation Purporting to Create a Lien@ with the Airport=s suit.








Skyleasing
filed a counterclaim against the Airport, an officer of the Airport, and an
employee of the Airport, alleging slander of title, fraudulent lien, tortious
interference with prospective business relations, and conspiracy.  Skyleasing
contends the Airport=s allegedly improper lien interfered with Skyleasing=s prospective sale of one airplane. 
Skyleasing requested a temporary injunction dissolving all liens and also seeks
monetary damages.  Skyleasing also filed a cross claim against ADS seeking Acontribution@ to the extent Skyleasing is
ultimately found liable to the Airport for any charges.

Subsequently,
the trial court granted the temporary injunction requested by the Airport and
prohibited ADS and Skyleasing from transferring or selling the planes.  The
trial court denied the temporary injunction requested by Skyleasing.

The
lease contains a provision requiring arbitration of Aany controversy or claim between the
parties hereto relating to this lease, including, without limitation, any claim
based on or arising from an alleged tort.@  Therefore, the Airport, ADS, and
Cohen agreed to arbitrate their dispute, and the trial court signed an order
compelling arbitration.  Skyleasing then filed a motion to compel arbitration
of its dispute with the Airport.  Although Skyleasing is not a party to the
lease, it sought to compel arbitration under the equitable estoppel doctrine. 
The trial court denied Skyleasing=s motion and severed the Airport=s claims against ADS and Cohen from
this case.  Skyleasing filed this interlocutory appeal from the order denying
its motion to compel arbitration.[2]

II.  Equitable Estoppel Doctrine








Apparently,
all parties agree the Texas Arbitration Act (ATAA@) governs Skyleasing=s motion to compel arbitration. 
Under the TAA, a court shall order the parties to arbitrate if the party
seeking to compel arbitration proves (1) a valid, enforceable agreement to
arbitrate exists, and (2) the claims asserted fall within the scope of the
agreement.  Valero Energy Corp. v. Teco Pipeline Co., 2 S.W.3d 576, 581
(Tex. App.CHouston [14th Dist.] 1999, no pet.); see Tex. Civ. Prac. & Rem. Code Ann. ' 171.021(a) (Vernon 2005).  The
Airport and Skyleasing have no agreement to arbitrate.  Skyleasing is not a
party to the lease between the Airport and ADS, and the Airport and Skyleasing
have no other contractual relationship.  Nevertheless, in its sole issue,
Skyleasing contends it is entitled to compel arbitration under the doctrine of
equitable estoppel.








Although
arbitration is encouraged, it is a contractual matter, and in the absence of an
agreement to arbitrate, a party cannot be forced to forfeit the constitutional
protections of the judicial system and submit its dispute to arbitration.  Jenkens
& Gilchrist v. Riggs, 87 S.W.3d 198, 201 (Tex. App.CDallas 2002, no pet.); see In
re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737B38 (Tex. 2005); Freis v. Canales,
877 S.W.2d 283, 284 (Tex. 1994).  However, Texas appellate courts have adopted
the equitable estoppel doctrine espoused by the Fifth Circuit in Grigson v.
Creative Artists Agency, L.L.C.  210 F.3d 524 (5th Cir. 2000); see Brown
v. Anderson, 102 S.W.3d 245, 249 (Tex. App.CBeaumont 2003, pet. denied); In re
EGL Eagle Global Logistics, L.P., 89 S.W.3d 761, 764B65 (Tex. App.CHouston [1st  Dist.] 2002, orig.
proceeding [mand. denied]); McMillan v. Computer Translation Sys. &
Support, 66 S.W.3d 477, 482 (Tex. App.CDallas 2001, orig. proceeding); Tex.
Enters., Inc. v. Arnold Oil Co., 59 S.W.3d 244, 249 (Tex. App.CSan Antonio 2001, orig. proceeding). 
Under this doctrine, a non-signatory to a contract containing an arbitration
clause may compel arbitration of a signatory=s claims in two Alimited@ circumstances: (1) when the
signatory must rely on the terms of the contract in asserting its claims
against the non‑signatory; or (2) when the signatory raises allegations
of Asubstantially interdependent and
concerted misconduct@ by both the non‑signatory and a signatory.  Grigson,
210 F.3d at 526B27.[3]  This
doctrine is based on the principle that a signatory to a contract containing an
arbitration clause cannot Ahave it both ways@: it cannot seek to hold a non-signatory
liable pursuant to duties imposed by the contract but refuse to arbitrate
because the defendant is a non-signatory.  Id.

Whether
to utilize the equitable estoppel doctrine to compel arbitration is within the
trial court=s discretion, and we review its decision only for abuse of discretion. 
See id.  Meyer v. WMCO‑GP, L.L.C., 126 S.W.3d 313, 317
(Tex. App.CBeaumont 2004, pet. granted);  Tex. Enters., Inc., 59 S.W.3d at 249. 
We may reverse a trial court for abuse of discretion only when it acted in an Aarbitrary or unreasonable@ manner or Awithout reference to any guiding
rules and principles.@  See Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241B42 (Tex. 1985); Mosk v. Thomas, 183 S.W.3d 691, 696
(Tex. App.CHouston [14th Dist.] 2003, no pet.).  We may not reverse for abuse of
discretion merely because we disagree with the trial court=s decision if it was within the trial
court=s discretionary authority. 
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Nguyen
v. Intertex, Inc., 93 S.W.3d 288, 293 (Tex. App.CHouston [14th Dist.] 2002, no pet.); see
Downer, 701 S.W.2d at 242.

III.  Application of Grigson 








Skyleasing
contends the trial court abused its discretion by refusing to compel
arbitration because one or both prongs of Grigson are satisfied. 
Preliminarily, we must clarify what claims we consider when evaluating whether
the equitable estoppel doctrine applies here.  The record indicates that the
remaining dispute in this case consists of the following: the Airport=s claims against Skyleasing;
Skyleasing=s counterclaim against the Airport and an officer and an employee of the
Airport; Skyleasing=s cross-claim against ADS; and Skyleasing=s AMotion for Judicial Review of
Documentation Purporting to Create a Lien.@[4]  Skyleasing=s appellate briefs and motion to
compel arbitration are not clear as to whether it seeks to compel arbitration
of only the Airport=s claims against Skyleasing or the entire dispute.[5]








To the
extent Skyleasing requests that we compel arbitration of the entire dispute or
any part of the dispute besides the Airport=s claims, Skyleasing has arguably
waived its complaint.  On appeal, Skyleasing argues only that the Airport=s claims against Skyleasing satisfy
the Grigson test.  Skyleasing seems to presume that, if the Airport is
equitably estopped to avoid arbitration of its own claims against Skyleasing,
then it must be equitably estopped to avoid arbitration of the other claims. 
However, Skyleasing offers no argument or authority supporting a contention
that the equitable estoppel doctrine would require arbitration of Skyleasing=s counterclaim against the Airport,[6]
Skyleasing=s counterclaim against an officer and an employee of the Airport,[7]
Skyleasing=s cross-claim against ADS,[8] and
Skyleasing=s AMotion for Judicial Review of
Documentation Purporting to Create a Lien.@[9]  Nonetheless, we conclude the trial
court did not abuse its discretion by finding the Airport=s claims against Skyleasing do not
satisfy either prong of Grigson.  Therefore, because the Airport has not
invoked the equitable estoppel doctrine in the first place, we need not decide
whether the doctrine would require arbitration of any of the other claims.

A.        Whether the Airport Must
Rely on the Terms of the Lease in Asserting its Claims Against Skyleasing. 

Skyleasing
contends the first prong of Grigson is satisfied because the Airport
must rely on the terms of its lease with ADS to assert its claims against
Skyleasing.  We disagree. 








The
Airport asserted two types of claims against Skyleasing: first, the Airport
sought a temporary injunction to prevent Skyleasing from transferring ownership
of the planes; and second, the Airport seeks monetary damages and attorneys= fees from Skyleasing under the
theory of quantum meruit.  The trial court granted some of the relief requestedCthe temporary injunctionCbefore Skyleasing moved to compel
arbitration.  Therefore, only the quantum meruit claim was pending when
Skyleasing moved to compel arbitration.[10]
Accordingly, we will consider whether the Airport must rely on the lease to
assert the quantum meruit claim against Skyleasing.[11]

Quantum
meruit is a remedy that is based on an implied agreement to pay for benefits
rendered and knowingly accepted.  Kellogg, 166 S.W.3d at 740; Vortt
Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990).  AQuantum meruit is an equitable remedy
which does not arise out of a contract, but is independent of it.@  Vortt Exploration, 787
S.W.2d at 944.  A party may recover under quantum meruit only when there is no
express contract covering the services or materials furnished.  Vortt
Exploration, 787 S.W.2d at 944; see Kellogg, 166 S.W.3d at
740.  Thus, a claim for quantum meruit and a contract claim are Amutually exclusive.@  Doctors Hosp. 1997, L.P. v. Sambuca
Houston, L.P., 154
S.W.3d 634, 637 n.1 (Tex. App.C Houston [14th Dist.] 2004, pet. abated); see Kellogg,
166 S.W.3d at 740; Vortt Exploration, 787 S.W.2d at 944.  The Airport
sues Skyleasing in quantum meruit because Skyleasing was not a party to the
lease, and, therefore, the Airport cannot hold Skyleasing liable for the fuel
and storage charges pursuant to the terms of the lease.  In essence, the
Airport pleads a claim against Skyleasing that eliminates the need to rely on a
contract.








Skyleasing
suggests that the Airport would have no claim against Skyleasing Abut for@ the existence of the lease because
the Airport provided the storage services and fuel to Skyleasing=s planes at ADS=s request pursuant to the lease. 
However, since Grigson, the Fifth Circuit has clarified that the first
prong is not satisfied simply because the signatory=s claims against the non-signatory Atouch matters@ covered by the contract or Aare dependent upon@ the contract; instead, the signatory=s claims must rely on the
terms of the contract.  See Hill v. G.E. Power Sys., Inc., 282
F.3d 343, 348B49 (5th Cir. 2002) (citing Grigson, 210 F.3d at 527).  Although
the Airport might not have a claim against Skyleasing Abut for@ the existence of the lease, the
Airport is not required to prove any terms of the lease to assert its quantum
meruit claim against Skyleasing. 

Finally,
Skyleasing notes that the Airport attached to its petition ledger sheets
showing fuel charges for the planes.  Skyleasing states that these charges are
based on the Aflight school@ prices specified in the lease.  Thus, Skyleasing suggests
the Airport must rely on the terms of the lease to assert its claim against
Skyleasing because it seeks to recover the prices for fuel that were specified
in the lease.  The Airport=s purpose in attaching the ledger sheets is not clear. 
However, the Airport refers to the ledger sheets when mentioning it placed
liens on the planes for unpaid fuel and storage services.  The Airport does not
refer to the ledger sheets when requesting monetary damages from Skyleasing. 
Instead, the Airport pleads for the Areasonable value@ of the services as allowed under the
quantum meruit doctrine.  See Hudson v. Cooper, 162 S.W.3d 685, 688
(Tex. App.CHouston [14th Dist.] 2005, no pet.) (recognizing measure of quantum
meruit recovery is reasonable value of the services).  Consequently, the
Airport does not rely on the terms of the lease when seeking monetary damages
from Skyleasing. 

In sum,
the Airport need not, and cannot, rely on the terms of the lease to assert its
quantum meruit claim against Skyleasing. Accordingly, we hold the trial court
did not abuse its discretion by finding that the first Grigson prong is
not satisfied.








B.        Whether the Airport Raises
Allegations of ASubstantially Interdependent and Concerted Misconduct@ by Both Skyleasing and ADS.

Skyleasing
contends the second Grigson prong is satisfied because the Airport
raises allegations of Asubstantially interdependent and concerted misconduct@ by Skyleasing and ADS.  Whether this
second prong is satisfied presents a more difficult question because the Grigson
court did not define a precise standard for determining what constitutes Asubstantially interdependent and
concerted misconduct,@ and Texas courts have not applied a uniform standard.  Some
Texas courts have suggested that this prong is satisfied if the allegations
against a signatory and non-signatory are Abased upon the same operative facts
and are inherently inseparable.@  See Brown, 102 S.W.3d at 249B50; Eagle Global Logistics, 89
S.W.3d at 764B66.[12]  Other Texas
courts have found this prong satisfied based upon the allegations of the
particular case without mentioning whether the allegations are Abased upon the same operative facts
and are inherently inseparable.@  See McMillan v. Computer Translation Sys. &
Support, Inc., 66 S.W.3d 477, 482B83 (Tex. App.C Dallas 2001, orig. proceeding);
Universal Computer Consulting Holding, Inc. v. Hillcrest Ford Lincoln‑Mercury,
Inc., Nos. 14‑04‑00819‑CV, 14‑04‑01103‑CV,
2005 WL 2149508, at *8 (Tex. App.CHouston [14th Dist.] September 8,
2005, orig. proceeding).








We do
not read the terms, Asubstantially interdependent and concerted misconduct@ and Abased upon the same operative facts
and are inherently inseparable@ as necessarily synonymous although some courts seem to use
them interchangeably.  See Brown, 102 S.W.3d at 249B50; Eagle Global Logistics, 89
S.W.3d at 764B66.  Nevertheless, here, Skyleasing suggests the Airport=s allegations against ADS and
Skyleasing are Abased upon the same operative facts and are inherently
inseparable.@  Regardless of how Texas courts have interpreted this second Grigson
prong, Skyleasing does not cite, and we have not found, a case in which the
prong was satisfied under facts substantially similar to this case.








Skyleasing
relies heavily on Eagle Global Logistics.  In that case, the plaintiff
sued a former employee for breach of contract, theft of trade secrets and
confidential information, tortious interference with business relationships,
and civil conspiracy.  Eagle Global Logistics, 89 S.W.3d at 763B64.  The plaintiff alleged that the
employee violated his employment contract by disclosing the plaintiff=s trade secrets and confidential
information to his new employer and soliciting the plaintiff=s customers.  See id.  The
plaintiff also sued the new employer and several related parties for theft of
trade secrets and confidential information, tortious interference with business
relationships, and civil conspiracy.  Id.  The court of appeals held
that the plaintiff was required to arbitrate its claims against the new
employer and its related parties although they were not parties to the contract
between the plaintiff and the employee which contained the  arbitration
agreement.  See id. at 764B66.  The court found that the
plaintiff alleged Asubstantially interdependent and concerted misconduct@ by all the defendants.  See id. 
The court emphasized that the plaintiff alleged claims jointly Aagainst all defendants@ and alleged Aconcerted, coordinated acts@ by all the defendants.  Id.
at 765.[13]  In fact,
courts have been quick to find the second Grigson prong satisfied when a
signatory makes claims against a signatory and a non-signatory collectively
and/or alleges some type of joint conduct.[14]

In
contrast, the Airport does not allege any joint and concerted conduct by ADS
and Skyleasing, such that the claims against ADS and Skyleasing cannot be
resolved separately; there is no allegation that they somehow conspired or
otherwise joined in an effort to use the Airport=s hangars and fuel without paying for
the services.[15]  Moreover,
the Airport has not alleged the same causes of action collectively against ADS
and Skyleasing.[16]








Nonetheless,
A[e]ach case, of course, turns on its
facts.@  Grigson, 210 F.3d at 527. We
acknowledge that, in the instant case, whether the allegations satisfy the
second Grigson prong is a Aclose call.@  On the one hand, the Airport=s allegations against ADS and
Skyleasing both stem from same underlying factCthe Airport was not paid for storage
services and fuel provided to Skyleasing=s planes.  The Airport alleges that
ADS obtained the storage services and fuel pursuant to the lease.  The Airport
alleges Skyleasing benefitted from the storage services and fuel as owner of
the planes.  In short, the Airport seeks to hold both parties liable for the
unpaid storage services and fuel.

On the
other hand, the Airport asserts distinct theories of liability against each
party and need not prove the same facts to support each theory.  See Tarrant
Reg=l Water Dist. v. Gragg, 151 S.W.3d 546, 557 (Tex. 2004) (recognizing
breach-of-contract and quantum meruit claims have different elements of
proof).  To prevail on its breach-of-contract claim against ADS, the Airport
must prove the following: (1) the existence of the lease; (2) the Airport
performed or tendered performance under the lease; (3) ADS breached the lease;
and (4) the Airport sustained damages as a result of ADS=s breach.  See Roof Sys.,
Inc. v. Johns Manville Corp., 130 S.W.3d 430, 442 (Tex. App.CHouston [14th Dist.] 2004, no pet.)
(setting forth elements of breach-of-contract claim).  To prevail on its
quantum meruit claim against Skyleasing, the Airport must prove the following:
(1) it rendered valuable services or furnished materials; (2) for Skyleasing;
(3) Skyleasing accepted and enjoyed the services or materials; and (4)
Skyleasing had reasonable notice that the Airport, in performing the services
or providing the materials, expected payment.  See Vortt Exploration,
787 S.W.2d at 944 (setting forth elements of quantum meruit claim).








Skyleasing
contends it is not liable to the Airport because ADSCnot SkyleasingCobtained the storage services and
fuel.  Although Skyleasing ultimately may defeat the quantum meruit claim on
that basis, the Airport need not allege that ADS obtained the storage services
and fuel to pursue a quantum meruit claim against Skyleasing as owner of the
planes.  See id.  Thus, although the Airport=s claims against ADS and Skyleasing
stem from the same underlying fact, the law allows the Airport to assert
independent claims against each party.  Consequently, we cannot conclude the
claims necessarily are Abased upon the same operative facts and are inherently
inseparable.@[17]

Moreover,
we are constrained by the abuse-of-discretion standard.  See Grigson,
210 F.3d at 528;  Meyer, 126 S.W.3d at 317;  Tex. Enters., Inc.,
59 S.W.3d at 249; see also Hill, 282 F.3d at 349 (recognizing
that, when deciding whether to apply the Grigson equitable estoppel
doctrine, Athe district court is better equipped to make the call than this court,
and we do not lightly override that discretion.@); In re Weekley Homes, L.P.,
180 S.W.3d 127, 134B35 (Tex. 2005) (recognizing, albeit in opposite situation
where signatory sought to compel arbitration of non-signatory=s claims under direct-benefits
estoppel, that Athe equitable nature of the doctrine may render firm
standards inappropriate, requiring trial courts to exercise some discretion
based on the facts of each case.@).  Because Skyleasing does not cite
a case finding Asubstantially interdependent and concerted misconduct@ in a similar situation and this case
does present a Aclose call,@ we cannot conclude the trial court acted in an Aarbitrary or unreasonable@ manner or  Awithout reference to any guiding
rules and principles@ by finding the second Grigson prong is not
satisfied.  See Downer, 701 S.W.2d at 241B42.








Finally,
Aa party=s right to litigate a dispute that
the party has not agreed to arbitrate is at least as worthy of protection as a
bargained‑for right to arbitration.@ Yazdani‑Beioky v. Bhandara, No. 14‑00‑01509‑CV,
2001 WL 1429414, at *3, (Tex. App.CHous. [14 Dist.] Nov. 15, 2001, no
pet.) (not designated for publication) (citing Freis, 877 S.W.2d at
284); see Jenkens & Gilchrist, 87 S.W.3d at 201.  Because the
Alimited@ circumstances warranting application
of the equitable estoppel doctrine are not clearly satisfied here, we hold the
trial court did not abuse its discretion by finding the Airport should not lose
its right to litigate its dispute with SkyleasingCa complete stranger to the lease.

Accordingly,
we overrule Skyleasing=s sole issue and affirm the trial court=s order denying Skyleasing=s motion to compel arbitration.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed August 10, 2006.

Panel consists of Justices Hudson,
Frost, and Seymore.

 









[1]  The Airport also sued AHouston Skyline Aviation, L.P.@
alleging it owned some planes stored at the facility, but there is no
indication Houston Skyline Aviation, L.P. has appeared in the suit.





[2]  See Tex. Civ.
Prac. & Rem. Code Ann. '
171.098(a)(1) (Vernon 2005) (authorizing interlocutory appeal from order
denying motion to compel arbitration under the Texas Arbitration Act).





[3]  The Texas Supreme Court recently acknowledged the
equitable estoppel doctrine and Grigson in situations where a
non-signatory sought to compel arbitration of a signatory=s claims, but the court did not apply the two-pronged
test outlined in Grigson.  See In re Palm Harbor Homes, Inc.,
49 Tex. Sup. Ct. J. 711, 2006 WL 1562546, at *3B4 (Tex. June 9, 2006) (citing Grigson and the equitable estoppel
theory but allowing non-signatory to compel arbitration of signatory=s claims because the arbitration agreement provided
that it inured to the benefit of the non-signatory); In re Vesta Ins. Group,
Inc., 192 S.W.3d 759, 760B61 (Tex. 2006)
(per curiam) (acknowledging Grigson in a footnote but deciding plaintiff
signatory was estopped to oppose arbitration of its tortious interference claim
against non-signatories because each non-signatory was a current or former owner,
officer, agent, or affiliate of the signatory with whom the plaintiff had an
arbitration agreement).  However, Texas appellate courts have adopted the Grigson
test, and Skyleasing urges application of that test.





[4]  As far as we can determine from the record, all
these claims remained pending in this case after the dispute between the
Airport and ADS and Cohen was severed.





[5]  At some points in its appellate briefs, Skyleasing
seems to request that we compel arbitration of only the Airport=s claims against Skyleasing; but at other points, it
requests that we compel arbitration of the Adispute.@  Similarly, at one point in its motion to compel
arbitration, Skyleasing seemed to request that the trial court compel
arbitration of only the Airport=s claims
against Skyleasing; but it also prayed that the trial court compel arbitration
of Skyleasing=s counterclaim against the Airport and its cross-claim
against ADS and argued these claims should not be severed from one another. 





[6]  To the extent Skyleasing seeks to compel arbitration
of its counterclaim against the Airport, it effectively asks us to expand the Alimited@
equitable estoppel exception such that a signatory whose own claims invoke the
doctrine is also estopped to avoid arbitration of a counterclaim in certain
instances. However, Skyleasing provides no argument or authority for
determining under what parameters, if any, a signatory should be required to
also arbitrate a counterclaim. 





[7]  Skyleasing filed the counterclaim against the
officer for his actions on behalf of the Airport and  in his individual
capacity and filed the counterclaim against the employee in her individual
capacity.  Skyleasing offers no argument or authority showing it is entitled to
arbitrate a counterclaim for slander of title, fraudulent lien, tortious
interference with prospective business relations, and conspiracy against parties,
who, as individuals, are not even parties to the lease.





[8]  Skyleasing offers no argument or authority to show
ADS should be required to arbitrate  Skyleasing=s claim against it when there is apparently no arbitration agreement
between ADS and Skyleasing.





[9]  Before the Airport filed suit, Skyleasing filed the AMotion for Judicial Review of Documentation Purporting
to Create a Lien,@ which was consolidated with this suit.  Skyleasing
makes no argument as to how this motion should be treated when suggesting the Adispute@
should be arbitrated.  





[10]  Skyleasing has not requested that the trial court,
or this court, dissolve the temporary injunction, so the entire dispute could
be submitted to arbitration, if that were even possible.  Moreover, the purpose
of the injunction was to preserve the status quo, i.e. prevent Skyleasing from
transferring the liened planes until the Airport=s claim for monetary damages is resolved.  Therefore, we will treat the
quantum meruit claim as the only pending claim.





[11]  The Airport urges it need not rely on the terms of
the lease because section 70.301 of the Texas Property Code allowed it to place
liens on the planes absent a contractual relationship with Skyleasing.  See
Tex. Prop. Code Ann. ' 70.301(a) (Vernon Supp. 2006) (providing that one who
Astores, fuels, repairs, or performs maintenance work
on an aircraft has a lien on the aircraft for: (1) the amount due under a
contract for the storage, fuel, repairs, or maintenance work; or (2) if no
amount is specified by contract, the reasonable and usual compensation for the
storage, fuel, repairs, or maintenance work.@). 
The Airport has indeed filed liens on Skyleasing=s planes pursuant to section 70.301.  However, in its petition, the
Airport mentioned the liens to support its request for a temporary injunction
precluding Skyleasing from disposing of the planes.  The Airport does not base
its remaining claim for monetary damages on the liens; for example, it does not
seek to foreclose, or otherwise enforce, the liens.  Therefore, we need not
decide whether section 70.301 allowed the Airport to place a lien on Skyleasing=s planes absent a contractual relationship.  Instead,
we will consider only whether the Airport=s
remaining quantum meruit claim satisfies Grigson.

 





[12]  Prior to Grigson, this court required a
signatory plaintiff to arbitrate if its claims against a non-signatory and a
signatory defendant were Abased on the same operative facts@ and were Ainherently
inseparable@; however, in those cases, each non-signatory was an
affiliate corporation, officer, or director of a signatory defendant, and the
same claims were made against the non-signatory and the signatory defendant
and/or the claims sounded in alter ego.  See In re Educ. Mgmt. Corp., Inc.,
14 S.W.3d 418, 424B25 (Tex. App.CHouston
[14th Dist.] 2000, orig. proceeding); Valero Energy Corp., 2 S.W.3d at
593.  However, since Grigson, at least one court has held that there
need not be a corporate, agency, or employment relationship between the
non-signatory and defendant signatory for the non-signatory to compel
arbitration although such a relationship may be a factor for a court to
consider when determining whether the claims are Ainherently inseparable.@  See Eagle
Global Logistics, 89 S.W.3d at 765B66.





[13]  With respect to the cause of action for theft of
trade secrets and confidential information, the plaintiff alleged the new
employer and its related entities Aassisted,
ratified, and benefitted@ from the
employee=s misconduct by utilizing and profiting from his theft
of confidential information.  Eagle Global Logistics, 89 S.W.3d at 765
(Emphasis in original).   With respect to the cause of action for civil
conspiracy, the plaintiff alleged that all the defendants Asecretly conspired, agreed, and endeavored to
deprive@ the plaintiff of confidential information, current
and prospective business, and business goodwill.  Id.  (Emphasis in
original).





[14]  See, e.g., Hill, 282 F.3d at 349
(plaintiff signatory alleged non‑signatory and defendant signatory Aworked in tandem@ to
misappropriate trade secrets and fraudulently induce plaintiff to contract with
them); Jureczki v. Banc One Texas, N.A., 252 F.Supp.2d 368, 375B78 (S.D. Tex. 2003), aff=d, 75 Fed.
Appx. 272 (5th Cir. 2003) (plaintiff signatories made factual and legal
allegations against nonsignatories and signatories collectively as Adefendants,@
and allegation that all defendants acted in concert to defraud plaintiffs was
at the heart of all the claims); Brown, 102 S.W.3d at 249B50 (plaintiff signatory alleged signatory corporation
breached their contract and four non-signatory officers of the corporation
committed fraud and negligent misrepresentation by representing corporation was
able to perform the contract; one officer executed the contract on behalf of
the corporation and the plaintiff  Alumps@ all four officers together with regard to the fraud
and negligent misrepresentation allegations); Universal Computer,
2005 WL 2149508, at *8 (plaintiff signatory asserted all legal causes of action
against the defendants collectively and asserted no independent legal causes of
action or factual allegations against non-signatories).





[15]  The Airport did plead that ADefendants@
are attempting to sell the planes to support its request for a temporary
injunction.  However, the Airport has not asserted any joint conduct with
respect to its claims for monetary damages.





[16]  As Skyleasing notes, the Airport seems to plead for
attorneys= fees against ADS and Skyleasing collectively because
it Aseeks recovery of all its attorneys fees and expenses
pursuant to the express terms of the lease, Tex. Civ. Prac. & Rem. Code '38.001 et seq., and Texas Property Code '70.301 et. seq.@  If read in isolation, this paragraph might support a conclusion that
the Airport asserts interdependent claims against ADS and Skyleasing.  However,
a claim for attorneys= fees necessarily would be dependent upon the
underlying cause of action.  Because the Airport=s underlying claim against ADS is breach of contract and its
underlying  claim against Skyleasing is quantum meruit, the Airport does not
assert interdependent claims simply because it pleads for attorneys= fees against ADS and Skyleasing collectively. 





[17] We note that our evaluation of both Grigson
prongs overlaps in this case.  The fact that a breach- of-contract claim and a
quantum meruit claim are mutually exclusive, independent, and have different
elements of proof, guides to a certain extent our conclusion that the claims
against ADS and Skyleasing are not Abased
upon the same operative facts and . . . inherently inseparable.@  However, equitable estoppel Ais much more readily applicable@ when both independent prongs are satisfied.  Grigson,
210 F.3d at 527B28.  Therefore, based on the particular circumstances
of this case, we may be guided by overlapping considerations.