**VALERO ENERGY CORPORATION, et al., Appellants,**

v.

**WAGNER & BROWN, II, a Partnership, Appellee.**

**No. 08–89–00088–CV.**

Court of Appeals of Texas, El Paso.

Sept. 20, 1989.

Rehearing Denied Oct. 18, 1989.

J. Clifford Gunter, Gayle A. Boone, Michael L. Dinnin, Bracewell & Patterson, Houston, for appellants.

Kleber C. Miller, Janie L. Frank, Shannon, Gracey, Ratliff & Miller, Fort Worth, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

Appellee, Wagner & Brown, II, ("Wagner"), filed suit against Appellants, Valero Energy Corporation, and a number of its subsidiaries and affiliated companies, ("Valero"), seeking damages for wrongful curtailment of casinghead gas production and for failure to properly qualify its special gas marketing programs pursuant to Texas Railroad Commission rules and regulations. Valero, in its answer, attempted to compel arbitration under a clause in its contract with Wagner and, in fact, initiated arbitration procedures. Wagner then filed another suit, later consolidated into the first suit, for a temporary restraining order and for temporary and permanent injunctions restraining and enjoining Valero from proceeding with arbitration. The trial court, after hearing, granted the temporary injunction on the grounds that Wagner's action sounding in tort was not subject to the arbitration clause. No bond was set by the order nor has Wagner filed a bond. It is from the interlocutory injunctive order that Valero brings this appeal. We reverse and remand.

The parties had entered into a contract on October 1, 1984, by the terms of which Wagner was obligated to sell all of the natural gas from its reserves to Valero and Valero was obligated to receive and purchase certain quantities of gas from Wagner. Article XIII of the contract provided that it was subject to all valid laws and lawful orders of all regulatory bodies that at any time had jurisdiction over the parties. In Article XVIII, the parties agreed to submit all disputes to binding arbitration "[i]n the case of any disagreement arising under this Contract between Buyer and Seller, including but not limited to the redetermination of the Base Price and/or the Redetermined Price.... The parties agree that third parties, who may be involved in any such disagreement arising under this Contract, may be brought into said arbitration proceeding."

In its damage suit, Wagner has alleged that Valero had wrongfully and fraudulently curtailed its purchase of certain categories of natural gas from Wagner by claiming its affiliates had become qualified as "separate first purchasers" when in fact they had failed to do so, and thus, could not be designated as "special marketing programs," all in violation of the rules and regulations of the Texas Railroad Commission, which was and is the governing regulatory body in such matters. Wagner seeks actual damages resulting from the wrongful curtailment with respect to an

alleged loss of ability to produce certain amounts of oil, a drop in oil prices and the delayed or deferred production of oil and gas in the amount of $10,600,000.00, and exemplary damages of $30,000,000.00 for Valero's fraudulent conduct.

Valero brings six points of error. The first of these is to the effect that the injunctive order is void because it fails to set a bond as required by Tex.R.Civ.P. 684. In the second point, Valero avers that the order granting the temporary injunction must be reversed "because the trial court had no choice but to compel arbitration." In its third through sixth points of error, Valero complains that the trial court abused its discretion by granting the injunction because Wagner failed to sustain its burden to show a probable right of recovery on the merits, immediate and irreparable harm, absence of an adequate remedy at law and a balancing of the equities or a serving of the public interest.

As a matter of convenience, we will first consider the second point of error: that arbitration of the dispute raised by Wagner's pleadings was mandatory. Valero argues that Wagner's claims are arbitrable since they arose out of the contract, which, if true, amount primarily to a cause of action for breach of Valero's contractual duties, even though Valero's conduct may also be tortious. In its reply, Wagner contends that tort claims, such as its cause of action against Valero, are not arbitrable because not foreseeable and no duty to arbitrate exists unless the parties express a clear and unambiguous intent to do so. Furthermore, Wagner argues that the arbitration clause involved in this case is a "narrow" one, which in no event would include tort claims.

■ Arbitration as a means of settling controversies is favored under both Texas and federal law. *Scherk v. Alberto-Culver Company*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740 (1943). A dispute arising under or out of a contractual relationship may give rise to both breach of contract and tort claims at the same time since the breach of a duty owed under the contract may involve tortious conduct. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947).

■ When a dispute arises between contracting parties whose relationship includes an agreement to arbitrate any dispute arising out of or under the contract, the trial court must first determine whether the issues presented are subject to arbitration under that agreement. *Merrill Lynch, Pierce, Fenner and Smith v. Maghsoudi*, 682 S.W.2d 593 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Merrill Lynch, Pierce, Fenner and Smith v. McCollum, Inc.*, 666 S.W.2d 604 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir.1987). The parties must have specifically agreed by clear language to arbitrate the matters in dispute. *Manes v. Dallas Baptist College*, 638 S.W.2d 143 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

■ Here, the parties specifically agreed to arbitrate any dispute "arising under this contract." Whether that phrase is narrower or as broad as the phrase "arising out of the contract" is, if there is a difference, unnecessarily sophisticated. The phrase in question may be broad enough to encompass some claims sounding in tort and too narrow to include others. The focus should be on the factual allegations in the petition rather than the legal causes of action asserted. *Genesco, Inc.*, 815 F.2d at 846. The test should be based on a determination of whether the particular tort claim is so interwoven with the contract that it could not stand alone or, on the other hand, is a tort completely independent of the contract and could be maintained without reference to the contract. Wagner is here asserting a tort claim that is directly related to its rights under the contract. It could have just as easily alleged a breach of contract action under the fact situation presented. If Valero had been violating regulations of the Texas Railroad Commission that either had no effect on Wagner's rights under the contract or affected such rights in a favorable manner, there would be no complaint;

Wagner is complaining because the alleged failure of Valero to meet certain requirements, mandated by the rules and regulations of the commission, has adversely affected its rights under the contract, in essence a dispute under the contract. On the other hand, if there were allegations of some intentional tort visited directly by Valero on Wagner, e.g., defamation or assault, or some cause of action antithetical to the contract, e.g., fraudulent inducement to enter into the contract or quantum meruit, the phraseology of the arbitration clause would have to be broad, indeed, to require arbitration.

In support of its contention, that the arbitration clause herein is too narrow to encompass its wrongful curtailment cause of action, Wagner cites a number of cases, but a close analysis of these cases indicates, in most instances, that the question was decided on the nature of the tort or other dispute alleged, rather than the specific wording of the clause requiring arbitration. *Central Texas Clarklift, Inc. v. Simmons*, 540 S.W.2d 745 (Tex.Civ.App.—Waco 1976, no writ) involved a non-competition agreement with a clause requiring arbitration "[u]pon the occurrence of a dispute relative to any provision of this agreement...." Simmons sold his interest in the business and went to work for a competitor, contrary to his agreement. According to Simmons, his former employer commenced harassing and threatening both him and his new employer with lawsuits with the result that he was fired. The Court held that arbitration would have been mandatory on the question of whether Simmons was competing, but since the self-help of committing an intentional tort against Simmons was not legally available to the former employer, the question of whether the former employer willfully and maliciously acted to interfere with Simmons' employment was not a dispute relating to the contract and, therefore, was not subject to arbitration.

In *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Supreme Court held that a dispute arising under the Sherman Act (15 U.S.C. sec.

1 et seq.) was not only within the ambit of a clause which required arbitration in Japan of "[a]ll disputes, controversies or differences which may arise between [the parties] ... out of or in relation to ... this Agreement or for the breach thereof ... [,]" but was also an arbitrable dispute even though arbitration would take place in Japan. The agreement had made no reference to matters involving antitrust.

While the Court in *Mediterranean Enterprises, Inc. v. Ssangyong Corporation*, 708 F.2d 1458 (9th Cir.1983) held that a clause mandating arbitration of "any disputes arising hereunder" was intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself, it went on to say that some of the counts in the petition were arbitrable (breach of contract and breach of fiduciary duty created by the agreement), but others were not because they related to matters totally unconnected to the contract (conspiracy to induce breach of a separate and distinct contract and conversion of some documents) or amounting to a denial of the contract (quantum meruit). The court cannot be said to have implied that a tort claim directly related to the interpretation and performance of the contract itself would not have been arbitrable under the clause in that case.

■ A further analysis of the many cases cited by both Wagner and Valero would serve no useful purpose. We find none that are sufficiently similar in their facts to support, by analogy, a holding opposite to ours. We hold that when the parties have agreed to arbitrate any dispute or disagreement "arising under the contract," all disputes of whatever nature, including those sounding in tort, that are directly and closely related to the performance of the contract and are otherwise arbitrable, are subject to arbitration upon the demand of a party to the agreement. Point of Error No. Two is sustained.

Having disposed of the second point of error in a manner that requires a reversal and remand, it becomes unnecessary for us

568

to consider Valero's remaining points of error other than to note that since arbitration of the dispute was mandatory, the issuance of the temporary injunction was improper and is set aside.

The order of the trial court granting the temporary injunction is reversed and the cause remanded for further proceedings consistent with the Texas General Arbitration Act and this opinion.