

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00077-CV

_____

RICHARD W. MONCRIEF AND MARSHALL M. SEARCY, INDIVIDUALLY AND IN THEIR RESPECTIVE CAPACITIES AS SUCCESSOR GENERAL PARTNERS OF MONCRIEF FAMILY PARTNERSHIP, L.P. AND TRUSTEES OF THE W.A. MONCRIEF, JR. MANAGEMENT TRUST, AND ON BEHALF OF THE MANAGEMENT TRUST AND MFP, Appellants

V.

TOM OIL MONCRIEF, GLORIA MARIE MONCRIEF, AND GARY R. ALLEN, Appellees

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-320546-20

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Opinion by Justice Wallach
Dissenting Opinion by Justice Birdwell

# OPINION

This case involves ongoing litigation among multiple parties involving multiple claims concerning the Moncrief family trusts and business entities. This is an interlocutory appeal from the trial court's order granting a temporary injunction prohibiting Appellants from proceeding to arbitration against Appellees and its refusal to rule on Appellants' concurrent motion to refer to arbitration Appellees' counterclaims against Appellants. We will reverse the trial court's order granting the temporary injunction. We will decline to entertain the appeal of the trial court's refusal to rule on the motion to refer the counterclaims to arbitration due to lack of jurisdiction.[1]

## I. Background

Appellants are Richard W. Moncrief (Dick) and Marshall M. Searcy (Marshall) individually and in their respective capacities as alleged successor general partners of the Moncrief Family Partnership, L.P. (MFP) and alleged Trustees of the W.A. Moncrief, Jr. Management Trust (Management Trust), and on behalf of the

---

[1] *Armstrong-Bledsoe v. Smith*, No. 2-03-323-CV, 2004 WL 362293, at *2 (Tex. App.—Fort Worth Feb. 26, 2004, no pet.) (mem. op.) (holding a trial court's issuance of a temporary injunction compelling an accounting from a trustee, which order was silent regarding arbitration, and without signing an order overruling the trustee's motion to compel arbitration of the dispute, did not constitute a denial of the motion to compel arbitration even in the presence of a Mother Hubbard clause in the injunction order); *Ground Force Const., LLC v. Coastline Homes, LLC*, No. 14-13-00649-CV, 2014 WL 2158160, at *3 (Tex. App.—Houston [14th Dist.] May 22, 2014, no pet.) (mem. op.) (holding there must be an order denying a motion to compel arbitration before an interlocutory appeal is permitted, and that it is insufficient for an order to merely have the effect of denying arbitration).

Management Trust and MFP, sometimes collectively referred to as Appellants. Appellees are Tom Oil Moncrief (Tom), Gloria Moncrief (Gloria), and Gary R. Allen (Gary), sometimes collectively referred to as Appellees.[2] In order to better understand the facts, we are including a graphic depiction of the relevant Moncrief family tree:



As shown, Bill, Charlie, Dick, and Tom are sons of Tex. Gloria is the oldest daughter of Charlie, who is now deceased.

Monty and Tex founded Montex Drilling Company in the 1940s to administer Moncrief family assets and interests, and other aspects of their businesses, including assets held in various family entities. Montex administers the assets of MFP and is the repository of its records, including financial records. MFP purportedly has assets valued at over one billion dollars.

---

[2]Because of the frequency of the last name Moncrief among the parties, we will refer to the parties by their first names or "Tex" for W.A. Moncrief, Jr.

In 1966, Monty and Elizabeth created a trust named the William Alvin Moncrief, Jr. Trust (the "1966 Trust") for their four living grandsons, Bill, Dick, Charlie, and Tom. The 1966 Trust assets have also been administered by Montex since the 1966 Trust was created. Gloria claims to hold the majority ownership (52%) interest in Montex. Gary is the Chief Financial Officer of Montex. The 1966 Trust owns 48% of Montex. Appellants assert that Gloria and Gary have wrongfully claimed to be Trustees of the 1966 Trust.

MFP was confirmed in 2010 by the Amended and Restated Limited Partnership Agreement of Moncrief Family Partnership, L.P. (MFP Agreement). The signatory parties to the MFP Agreement were Tex and the Estate of Deborah B. Moncrief, as general partners, and Tex and the Estate of Deborah Moncrief, as Limited Partners. Tex signed in his individual capacity, in both general and limited partner capacities, and as Personal Representative of the Estate of Deborah Moncrief in both capacities. Charlie was designated as an automatic successor general partner in the event of Tex's death, disability, or legal incapacity.

Under the MFP Agreement, "Partners" is defined as the "General Partners and the Limited Partners, and such other Persons who become Partners in accordance with the terms of this Agreement." "Successor General Partner" is defined as "[t]hat Person or those Persons appointed as a successor to any General Partner in accordance with Section 5.1(B) of this Agreement." "Limited partners" are defined as "[a]ny Partner who is designated as a Limited Partner on Exhibit 1 to this Agreement,

4

including Substituted Limited Partners admitted in accordance with the terms of this Agreement." The MFP Agreement further provided that the General Partners could amend the agreement with the written approval of all Partners. The Management Trust became a Limited Partner of MFP on January 1, 2012, under the First Amendment to the MFP Agreement, substituting for Tex, individually, as a limited partner. Its status as Limited Partner has not subsequently changed.

The MFP Agreement contains a broad arbitration clause providing in pertinent part:

> If **at any time during the existence of the Partnership**, **any question, disagreement, difference[,] or controversy shall arise between the Partners concerning the Partnership, or its affairs, transactions, business[,] or accounts, or the meaning or interpretation of this Agreement, or the rights, duties[,] or obligations of the Partners,** then **any Partner** may cause such question, disagreement, difference[,] or controversy **to be submitted to and determined by arbitration, in accordance with the rules then in effect of the American Arbitration Association.** [Emphasis added.]

Further, MFP Agreement section 8.6 states that "[t]his Agreement shall be binding upon the parties hereto and their respective . . . successors."

The signatory parties to the Fourth Amendment, dated June 19, 2019, were general partners Tex, individually, and as Trustee for the Deborah Beggs Moncrief Family Trust, and limited partners Tex, as Trustee of the Deborah Beggs Moncrief Family Trust and as Trustee of the Management Trust. The Fourth Amendment named Charlie, Tom, and Gary as Successor General Partners of MFP in the event of Tex's death, disability, or legal incapacity, and Gloria as automatic successor to Charlie in the event of his death, disability, or legal incapacity. Subsequently, Gloria succeeded

5

to Charlie. The Fourth Amendment did not amend or delete the arbitration agreement. Instead, it ratified and continued it and all other non-amended portions of the MFP Agreement.

The Fifth Amendment was signed by Tex effective in August 2021. Tom, Dick, and Marshall were appointed as the new successor general partners in the event of Tex's death, disability, or legal incapacity. Tex again signed as general partner individually and on behalf of the Deborah Beggs Moncrief Family Trust, and as limited partners on behalf of the Deborah Beggs Moncrief Family Trust and the Management Trust. The Fifth Amendment, like the Fourth, did not delete or amend the arbitration agreement but ratified and continued it and all non-amended portions of the MFP Agreement. Tex died on December 29, 2021, at 101 years of age.

Procedurally relevant to this appeal, on January 14, 2022, Appellees filed a Counterclaim against Appellants which disputed the validity of the Fifth Amendment, alleging, among other things, that Tex did not have the mental capacity, or was unduly influenced, to execute it. On January 17, 2022, the MFP, through Dick and Marshall in their capacities as alleged General Partners of MFP, instituted an arbitration proceeding with the American Arbitration Association under the broad arbitration clause in the MFP Agreement, which was docketed under Case No. 1-22-0000-2303 (the "arbitration proceeding"). The arbitration proceeding was supplemented on January 27, 2022, and February 10, 2022, to also include as claimants (1) Dick and Marshall, individually as the General Partners of MFP and (2) the Management Trust,

as a Limited Partner of MFP, through Dick and Marshall in their capacities as Trustees of the Management Trust.

In the arbitration proceeding, Dick and Marshall challenged the validity of the Fourth Amendment under which Appellees claim to be general partners. Dick and Marshall make this challenge as General Partners of MFP under the Fifth Amendment, as the Trustees of the Management Trust (a limited partner of MFP, hence a "partner" as defined), and on behalf of MFP itself. Dick and Marshall alleged that they took this action because the Fourth Amendment was superseded by the Fifth Amendment, which made them successor general partners along with Tom.

On January 19, 2022, Dick, Marshall, the Management Trust, and MFP filed a Motion to Refer Matter to Arbitration, Plea in Abatement, and Motion to Stay (the "Motion to Compel Arbitration and Stay Litigation"). The Motion to Compel Arbitration and Stay Litigation was amended on February 8, 2022.

On March 1, 2022, Appellees filed an Amended Counterclaim (the "Amended Counterclaim") which continued to dispute the validity of the Fifth Amendment by alleging that Tex did not have the mental capacity or was unduly influenced to sign it. Appellees, as counterclaimants, claimed to be general partners in MFP under the Fourth Amendment. They sought, in part, temporary and permanent injunctive relief against Appellants to prevent Appellants from proceeding with arbitration under the Fifth Amendment. Appellees also sought declaratory relief that,

> a. Unless and until Dickie and Searcy establish they are each partners in MFP, neither has any right, in any capacity, to invoke the MFP

7

Partnership Agreement's arbitration clause, to demand or pursue arbitration whether in their names or on behalf of MFP, or to invoke the arbitration clause against Tom, Gloria, Gary, or Montex;

b. Montex is neither a "Partner" nor a signatory to the arbitration agreement, and therefore may not be compelled by Dickie, Searcy, MFP, or the AAA to participate in any arbitration concerning the MFP; and

c. MFP is not a "Partner" with whom Tom, Gloria, Gary, or Montex may be required to arbitrate.

After a hearing on March 4, 2022, the trial court issued a temporary injunction enjoining Appellants from proceeding with the arbitration proceeding and it set a trial on the merits for August 21, 2023. The injunction did not place any restrictions on discovery or the conduct of proceedings prior to the trial. The trial court refused to sign an order on the Motion to Compel Arbitration and Stay of Litigation, and it also stated that it would not grant a stay of the trial court proceedings pending this Court's review of the temporary injunction. This interlocutory appeal ensued.

Reduced to its simplest, most relevant terms for purposes of this appeal, the dispute on the merits is who are the successor general partners of the MFP: Appellees under the Fourth Amendment or Appellants under the Fifth Amendment. Appellees contend that the Fifth Amendment is unenforceable because Tex lacked the mental capacity to execute it, or that Appellants procured it through undue influence, which Dick and Marshall deny.

The issue presented in this appeal is who should decide this dispute. Appellants assert that the case should be sent to arbitration and that the arbitrator should decide it. Appellees contend that it is the court's role to decide the undue influence and lack

of mental capacity issues because they are "gateway" issues regarding the formation of a valid contract. Appellants respond that the arbitration agreement, which is a part of the MFP Agreement, originally and as amended in the Fourth and Fifth Amendments, delegates the "gateway" issues of lack of capacity and undue influence regarding the Fifth Amendment, entrusting the decision to the arbitrator, not the court. Because we hold that the counterclaim, which is the same dispute that Appellants submitted to arbitration, should have been referred to arbitration, the trial court abused its discretion in granting the temporary injunction. We will reverse the order granting the temporary injunction and remand the case to the trial court for further proceedings consistent with this opinion.

## II. Standard of Review

The granting of a temporary injunction lies within the sound discretion of the trial court and will only be set aside if the trial court abused its discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* A trial court abuses its discretion in granting or denying a request for temporary injunctive relief when it misapplies the law to the established facts. *State v. Sw. Bell. Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975); *Estate of Shultz*, No. 11-21-00177-CV, 2022 WL 4099404, at *3 (Tex. App.—Eastland Sept. 8, 2022, no pet.) (mem. op.). When a valid arbitration agreement exists between the parties and its scope covers the dispute between the

9

parties, it is an abuse of discretion for the trial court to enjoin arbitration of the dispute. *Friedman & Feigler, LLP v. Massey*, Nos. 02-18-00401-CV, 02-18-00402-CV, 2019 WL 3269325, at *9 (Tex. App.—Fort Worth July 18, 2019, pet. denied) (mem. op. on reh'g); *Valero Energy Corp. v. Wagner & Brown II*, 777 S.W.2d 564, 567–68 (Tex. App.—El Paso 1989, writ denied). When, as here, the parties do not assert that either the state or federal arbitration acts are pivotal, we may rely on cases applying both acts under the assumption that their principles are consonant. *Gainey v. Minoo, LLC*, No. 02-19-00171-CV, 2019 WL 6768128, at *7 n.4 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.) (mem. op.).

## III. Analysis

Appellants (for purposes of this analysis, Marshall and Dick) contend on appeal that the trial court abused its discretion in granting the temporary injunction prohibiting them from proceeding with arbitration and in effectively overruling their motion to compel arbitration. According to Appellants, there was an existing arbitration agreement that was binding on the parties, and the dispute fell within the scope of the arbitration agreement. Appellees contend that the trial court properly granted the injunction, that Appellants are not entitled to invoke the arbitration agreement because the Fifth Amendment, under which they claim status as general partners, was procured by undue influence or was executed without mental capacity, and that Appellants are not entitled to otherwise invoke the arbitration agreement.

10

Appellees contend that the undue influence/mental capacity issues are "gateway" contract formation issues for the court to decide, not the arbitrator.

We begin with the *Valero Energy* case, a similar procedural scenario involving a breach of contract claim brought by Wagner & Brown against Valero for damages for curtailment of casinghead gas production. 777 S.W.2d at 565. Around the time that Valero filed its answer and moved to compel arbitration, it also initiated arbitration proceedings. Wagner & Brown then filed another suit, later consolidated into the first suit, seeking a temporary restraining order and temporary and permanent injunctions restraining and enjoining Valero from proceeding with arbitration. Without ruling on Valero's motion to compel arbitration, the trial court granted the temporary injunction, holding that Wagner & Brown's claims sounded in tort and did not fall within the scope of the arbitration agreement between the parties. Valero appealed the issuance of the temporary injunction. *Id.*

The court of appeals reversed the order granting the temporary injunction. *Id.* Since the existence of the arbitration agreement was not in issue, the court examined whether the claims were within the scope of the arbitration agreement. Finding that they were, the court held that arbitration of the claims was mandatory and that the trial court had abused its discretion in enjoining the arbitration. *Id.* at 567–68.

Having established the legal principle that issuance of a temporary injunction prohibiting arbitration is an abuse of discretion when arbitration is mandatory, we now move on to the question of whether arbitration in this case was mandatory, such

that issuance of the temporary injunction was an abuse of discretion. We believe that the proper analysis for this question was described in *Ridge Natural Resources, L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 119 (Tex. App.—El Paso 2018, no pet.). *Ridge* was decided under the Federal Arbitration Act (FAA), 9 U.S.C.A. § 2. 564 S.W.3d at 118. The *Ridge* court noted there are two settings for arbitration agreements: "standalone" agreements and arbitration agreements contained in larger contracts referred to as "container contracts." *Id.* at 118–19; *see also Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 232 (Tex. 2014) (referring to the non-arbitration provisions of an agreement as the "container contract"). The "separability doctrine," recognized by the United States Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397–98, 406, 411, 87 S. Ct. 1801, 1802–03, 1807, 1810 (1967), states that "when arbitration clauses appear in the context of a larger contract—often referred to as a 'container contract'—the arbitration clauses should be dealt with as though they are separate from the remainder of the agreement." *Ridge*, 564 S.W.3d at 119; *see TotalEnergies E&P USA, Inc. v. M.P. Gulf of Mexico, LLC*, No. 21-0028, 2023 WL 2939648, at *4 (Tex. Apr. 14, 2023). In *Ridge*, the El Paso court observed that

> [A]s a result, an arbitration clause, read in isolation, may properly delegate the resolution of certain so-called gateway issues relating to the validity of the container contract at large to an arbitrator when ordinarily, a trial court would be the proper forum for deciding contract validity issues. Indeed, this Court has previously recognized that if a contract's arbitration clauses "sweeps broadly enough to subsume gateway issues [regarding contract validity] into an arbitral dispute, and there is evidence that both parties agreed to the covenants, then the trial court should

12

compel arbitration and leave issues of validity and enforceability to the arbitrator." *Lucchese Boot Co. v. Licon*, 473 S.W.3d 390, 397 (Tex. App.—El Paso 2015, no pet.).

564 S.W.3d at 119. In light of the "separability doctrine," the *Ridge* court noted that

> *Prima Paint* held that in cases that involve gateway-issue arbitration clauses in container contracts that have unquestionably formed as a matter of state law, a federal district court could only entertain challenges aimed at the validity of the arbitration clauses themselves. *Prima Paint Corp.*, 388 U.S. at 403–404, 87 S. Ct. at 1805–06. Any attacks on or defenses against the enforcement of the container contract at large were matters to be resolved by an arbitrator. *Id.* This principle was later incorporated against the States, *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46, 126 S. Ct. 1204, 1208–09, 163 L.Ed.2d 1038 (2006), and the Texas Supreme Court adopted it as a matter of state law in *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 187–88 (Tex. 2009) (orig. proceeding). The *In re Morgan Stanley* case drew a distinction between contract formation issues and contract validity issues. *Id.* Contract formation issues are the sole province of the trial court. Without a predicate, properly formed contract, there can be no arbitration. Contract validity issues, on the other hand, may be decided by the trial court if they are aimed at the arbitration provisions viewed separately from the remainder of the document, while contract validity issues that deal with the container contract as a whole are for the arbitrator.

*Id.* Reading *Prima Paint* and *In re Morgan Stanley* together, the *Ridge* court articulated a

three-step inquiry regarding arbitrability:

> • **Step #1: Did a contract form?** The trial court has the authority to decide the threshold question of whether a contract ever formed in fact. "'Parties form a binding contract when the following elements are present: (i) an offer; (ii) an acceptance in strict compliance with the terms of the offer; (iii) a meeting of the minds; (iv) each party's consent to the terms; and (v) execution and delivery of the contract with the intent that it be mutual and binding.'" *Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 692 (Tex. App.—El Paso 2015, pet. denied). Conceivably, the trial court retains the authority to decide predicate issues related to these five elements of contract formation, even if the arbitration agreement delegates gateway issues to the arbitrator, as

13

parties cannot as a matter of law delegate the issue of whether the contract formed to the arbitrator.

**• Step #2: Do the arbitration covenants in a validly formed contract delegate contract validity issues to the arbitrator?** If there is prima facie evidence that a contract formed, the scope of the arbitration clauses' sweep will determine which issues are arbitrable and which are not. The trial court will presumptively retain the power to rule on gateway contract validity issues unless there is "clear, explicit evidence to the contrary." *See Lucchese Boot Co.*, 473 S.W.3d at 399 (finding that the delegation of certain claims to an arbitrator and the reservation of certain claims for the trial court did not evince an intent to submit gateway claims related to the container contract to arbitration).

**• Step #3: If the arbitration clause delegates contract validity questions to the arbitrator, is the party resisting arbitration levelling complaints about the validity of the arbitration clause specifically, or the validity of the container contract as a whole?** If the arbitration clauses purport to sweep broadly enough to subsume even contract validity issues into the arbitral forum—for example, by using language stating that arbitration will be required for "all disputes between an employer and employee" or "'[a]ny claim, dispute or other matter in question arising out of or related to the contract'"—then the presumption against the trial court retaining the ability to decide gateway issues is overcome. *Lucchese Boot Co.*, 473 S.W.3d at 398 (citing examples of broad-form arbitration clauses that did result in delegation of contract issues to the arbitrator). At that point, the distinction made in Prima Paint applies. **Issues regarding the validity of the container contract will be decided by the arbitrator, whereas issues regarding the validity of the arbitration clauses themselves must be decided by the trial court.**

*Id.* at 119–20 (emphasis added). We will now apply this three-step analysis to this case.

**Step #1: Did a contract form?** Yes.

Starting with the MFP Agreement, although only Tex physically signed it, he did so on behalf of two parties in two capacities: himself personally and as Representative of the Estate of Deborah B. Moncrief as general partners and as limited partners. The MFP Agreement provided for an automatic successor general

14

partner, Charlie, in the event of Tex's death, disability, or legal incapacity and for successor limited partners, and it had a broad arbitration clause requiring arbitration of disputes between partners on virtually any matter concerning the partnership, including "any question" "concerning the partnership." Clearly, the parties to the MFP Agreement anticipated that someday there would be different parties involved as successor partners and unequivocally provided that arbitration of disputes between them would be the agreed form of dispute resolution unless amended to provide otherwise. *See Rachal v. Reitz*, 403 S.W.3d 840, 844 (Tex. 2013) (holding that trust provision that unequivocally provided for arbitration of any disputes involving the trust would be resolved by arbitration would be enforced according to the settlor's intent). The elements for contract formation were present regarding the MFP Agreement, and no party to this appeal contests the validity of the MFP Agreement. Thus, the MFP Agreement became the "container agreement" for the arbitration agreement contained therein.

The Fourth Amendment, signed by Tex for all parties, substituted new parties to the MFP Agreement and added Tom, Gary, and Gloria as successor general partners. The signatory parties to the Amendment did not, however, delete or amend the arbitration provision; rather, it was ratified and continued along with all other unamended provisions of the MFP Agreement. Tom, Gloria, and Gary conceded in the trial court that they are parties to the arbitration agreement and in their First Amended Counterclaim claimed to be the successor general partners in the MFP

15

under the Fourth Amendment, seeking injunctive and declaratory relief regarding the rights of the parties based on the terms of the Fourth Amendment. As a result, not only are they successors to the MFP Agreement, they have claimed the benefit of the Fourth Amendment and are bound to the terms of the MFP Agreement, including the arbitration provision. *See Taylor Morrison of Tex., Inc. v. Skufca as Next Friend for KSX and KSXX*, 660 S.W.3d 525, 526 (Tex. 2023) (holding that party who sues based on a contract subjects himself to the terms of the contract, including any arbitration clause in the contract); *Rachal*, 403 S.W.3d at 847 (holding that a beneficiary of a trust who attempts to enforce rights that would not exist without the trust manifests her assent to the trust's arbitration clause); *Medinet Invs., LLC v. English*, No. 05-17-00179-CV, 2018 WL 1602525, at *3 (Tex. App.—Dallas April 3, 2018, pet. denied) (mem. op.) (holding that non-signatory to agreement containing arbitration agreement bound to arbitration agreement as assignee); *In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 138–39 (Tex. App.—Dallas 2009, no pet.) (orig. proceeding) (holding that arbitration agreement in limited-warranty agreement was binding on non-signatory successor entity to limited-warranty party); *see also Bonsmara Nat. Beef Co. LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 401 (Tex. 2020) (holding that non-signatories to arbitration agreement could require signatory to arbitration agreement to arbitrate where signatory sought to recover benefits of the contract against the non-signatories); *Ruff v. Ruff*, No. 05-18-00326-CV, 2020 WL 4592794, at *11–12 (Tex. App.—Dallas Aug. 11, 2020, pet. denied) (mem. op.) (holding that, due to application

of direct benefit estoppel theory, party who seeks to have rights under a contract containing an arbitration clause determined by declaratory judgment action in court cannot avoid enforcement of the arbitration provision of the same contract). As aptly phrased by the Texas Supreme Court, "[s]imply put, a person 'cannot both have his contract and defeat it too.'" *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018).[3] [4]

**Step #2: Do the arbitration covenants in a validly formed contract delegate contract validity issues to the arbitrator?** Yes.

The Texas Supreme Court summarized contractual delegation of arbitrability issues in *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018). A valid arbitration agreement creates a strong presumption in favor of arbitration. *Rachal*,

---

[3]Appellees rely on *Jody James Farms* for the proposition that a non-signatory to an arbitration agreement (Altman) could not require a signatory to the arbitration agreement (James) to arbitrate under the agreement. *Jody James* is distinguishable for several reasons. First, the court in *Jody James* held that the dispute between Altman and James did not fall within the scope of the arbitration agreement in question. Hence, it was not subject to arbitration under the agreement. 547 S.W.3d at 635. Second, the *Jody James* court held that there was no basis to invoke direct-benefits estoppel to support arbitration, unlike this case where Appellees' counterclaim seeks to claim the benefits of the Fourth Amended MFP Agreement against Appellants, who seek to enforce its arbitration clause against Appellees. 547 S.W.3d at 637. Finally, *Jody James* did not involve non-signatories who were contractual successors who would be bound to the arbitration clause being invoked.

[4]Appellees also rely on *Transcor Astra Grp. S.A. v. Petrobras Am., Inc.*, 650 S.W.3d 462, 481 (Tex. 2022), *cert. docketed* (U.S. Dec. 5, 2022) for the proposition that courts, not arbitrators, must decide whether the parties are bound by a given arbitration clause. While such is true as a general statement of law, the question in *Transcor* was whether a settlement agreement signed after an arbitration agreement controlled the parties' obligation to arbitrate. The fact situation in this case is materially different and requires a different analysis.

403 S.W.3d at 850. Both Texas and federal law require the enforcement of valid agreements to arbitrate. *See* 9 U.S.C. § 2; Tex. Civ. Prac. & Rem. Code Ann. § 171.021. Arbitrators are competent to decide any legal or factual dispute that the parties agree to arbitrate. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 268–69, 129 S. Ct. 1456, 1471 (2009); S*hearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 232, 107 S. Ct. 2332, 2340 (1987). Generally, a court may consider an arbitration agreement's terms to determine which issues must be arbitrated. *Forest Oil, Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008). But as parties have a right to contract as they see fit, they may agree to arbitral delegation clauses that send gateway issues such as arbitrability to the arbitrator. *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68–70, 130 S. Ct. 2772, 2776–77 (2010); *Forest Oil*, 268 S.W.3d at 61 & n.38. When faced with such an agreement, courts have no discretion but to compel arbitration unless the clause's validity is challenged on legal or public policy grounds. *Forest Oil*, 268 S.W.3d at 61. So, the proper procedure is for a court to first determine if there is a binding arbitration agreement that delegates arbitrability to the arbitrator. If there is such an agreement, the court must then compel arbitration so the arbitrator may decide gateway issues the parties have agreed to arbitrate. *See id.*

The scope of disputes subject to this arbitration clause is very broad, providing that

> . . . **any question, disagreement, difference[,] or controversy shall arise between the Partners concerning the Partnership, or its affairs, transactions, business[,] or accounts, or the meaning or interpretation of this Agreement, or the rights, duties[,] or**

18

**obligations of the Partners**, then any Partner may cause such question, disagreement, difference or controversy **to be submitted to and determined by arbitration, in accordance with the rules then in effect of the American Arbitration Association.** [Emphasis added.]

In the context of a broadly worded arbitration agreement in a container contract, similar types of broadly worded arbitration language have been held to delegate gateway arbitrability questions to the arbitrator. *TotalEnergies E&P USA, Inc.*, 2023 WL 2939648, at \*10 ("We agree with the vast majority of courts that, as a general rule, an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration."); *Hawdi v. Mutammara*, No. 01-18-00024-CV, 2019 WL 3418506, at \*1, \*4 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.) (mem. op.) (holding that the arbitration agreement delegated to the arbitrator "any dispute or controversy regarding the validity, interpretation, or enforceability of this agreement"; this clause included the appellant's substantive arbitrability gateway questions); *Seven Hills Com., LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 716 (Tex. App.—Dallas 2014, pet. denied) (holding that agreement to arbitrate any "dispute, claim[,] or controversy arising out of or relating to this Agreement or breach, termination, enforcement, interpretation[,] or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate" clearly demonstrated an agreement to delegate arbitrability to the arbitrator).

Further, when a broadly worded arbitration agreement incorporates arbitration rules specifically authorizing the arbitrator to decide arbitrability issues, such

constitutes "clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator." *Taylor Morrison of Tex., Inc. v. Klein*, Nos. 14-20-00520-CV, 14-20-00532-CV, 2021 WL 5459222, at \*4 (Tex. App.—Houston [14th Dist.] Nov. 23, 2021, no pet.) (mem. op.); *see also TotalEnergies E&P USA, Inc.*, 2023 WL 2939648, at \*12. The contractual language in *Klein* is very similar to that in our case. The scope of arbitration was broadly worded:

> Any and all claims, controversies, breaches[,] or disputes by or between the parties hereto, arising out of or related to this purchase agreement, the property, the subdivision or community of which the property is a part, the sale of the property by seller, or any transaction related hereto, whether such dispute is based on contract, tort, statute, or equity, . . . shall be arbitrated pursuant to the Federal Arbitration Act and subject to the procedures set forth as follows:[.]

2021 WL 5459222, at \*1. This was followed by the incorporation of the arbitration association and its rules: "In the event that a dispute arises between the parties, such dispute shall be resolved by and pursuant to the arbitration rules and procedures of [the] American Arbitration Association in effect at the time the request for arbitration is submitted." *Id.* The court noted that the AAA rules empower the arbitrator to decide issues of arbitrability, including the validity and enforceability of the arbitration agreement. *Id.* at \*4; *see* Am. Arb. Ass'n, *Commercial Arbitration Rules & Mediation Procedures*, R-7(a) (amended and effective Oct. 1, 2013), https://adr.org/sites/default/files/CommercialRules_Web-Final.pdf. ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."). The court held that these contractual provisions delegated

20

arbitrability to the arbitrator. *Klein*, 2021 WL 5459222, at \*4; *see also Jetall Cos. v. Sonder USA, Inc.*, No. 01-21-00378-CV, 2022 WL 17684340, at \*7, \*10 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, no pet.) (mem. op. on reh'g); *Prestonwood Tradition, LP v. Jennings*, 653 S.W.3d 436, 444 (Tex. App.—Dallas 2022, no pet.) (en banc op. on reconsideration); *Holifield v. Barclay Props., Ltd.*, No. 05-21-00239-CV, 2021 WL 4549498, at \*4 (Tex. App.—Dallas Oct. 5, 2021, pet. filed) (mem. op.); *MP Gulf of Mex., LLC v. Total E&P USA, Inc.*, 647 S.W.3d 96, 102 (Tex. App.—Tyler 2020), *aff'd*, 2023 WL 2939648; *Gilbert v. Rain and Hail Ins.*, No. 02-16-00277-CV, 2017 WL 710702, at \*4 (Tex. App.—Fort Worth Feb. 23, 2017, no pet.) (mem. op.). "Gateway arbitrability issues" include "fulfillment of prerequisites to arbitration; limitations, notice, laches, estoppel, and the like; and waiver of limitations periods, claims, or defenses." *Robinson v. Home Owners Mgmt. Ent., Inc.*, 590 S.W.3d 518, 525–26 (Tex. 2019).

**Step #3: If the arbitration clause delegates contract validity questions to the arbitrator, is the party resisting arbitration levelling complaints about the validity of the arbitration clause specifically, or the validity of the container contract as a whole? Issues regarding the validity of the container contract will be decided by the arbitrator, whereas issues regarding the validity of the arbitration clauses themselves must be decided by the trial court.** Appellees' objections go to the container contract as a whole, not the arbitration agreement.

Appellees' objections are to the Fifth Amendment to the MFP Agreement, the container contract. They contend that Tex either did not have the mental capacity to execute it or was unduly influenced to sign it by Appellants. If they are correct, then the changes to the Fourth Amendment making Appellants general partners in the MFP would not be effective, leaving Appellees as general partners. Hence, Appellants arguably would have no right to seek arbitration since they would not be among those who are entitled to seek arbitration under the agreement, i.e., "partners." They do not, however, challenge the existence of the arbitration clause contained in the underlying container agreement.

We have not been directed to any cases specifically on point, nor have we discovered any in our research. We do believe that the Texas Supreme Court has given guidance that leads us to our conclusion. In *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 588 (Tex. 2022), the decedent (Sotero) was an adult entertainer employed by Baby Dolls. Incident to her employment, she had executed a written agreement that contained an arbitration clause. *Id.* at 585. Subsequently, she was killed in an auto accident after leaving work. *Id.* The driver of the car in which she was a passenger was a fellow adult entertainer who allegedly had been overserved by Baby Dolls while at work. *Id.* The trial court denied Baby Dolls' motion to refer the case to arbitration, which was affirmed by the court of appeals. *Id.*

After the Supreme Court rejected the court of appeals' holding that the parties had not reached a meeting of the minds regarding the formation of their contract,

Sotero's family contended alternatively that if the arbitration contract had existed, it had expired by its terms and no contract existed so arbitration would be improper. *Id.* at 588. The Supreme Court rejected this argument. *Id.* It observed that this argument necessarily assumed that a contract had formed and, since the family did not contest the validity of the arbitration agreement itself, that the issue was for the arbitrator to decide because the separability doctrine reserved this type of question for the arbitrator. *Id.*

The result should be the same here. There is no question that the container contract and its included arbitration agreement had formed. Appellees' objections were to the enforceability of the terms of the Fifth Amendment to the MFP Agreement, not to the arbitration agreement. As noted by the Supreme Court, "[I]n the arbitration context, the *Prima Paint* separability doctrine provides that the arbitrator is to decide any challenge to the enforceability of an existing contract." *RSL Funding, LLC*, 569 S.W.3d at 125.[5] [6] And so, it should be the arbitrator here who decides in this case.

---

[5]The Management Trust also contends that the trial court abused its discretion in granting the temporary injunction and not referring Appellees' claims to arbitration. Our disposition of this point will be the same as for Marshall and Dick. The Management Trust, as a limited partner, hence also a "partner," was a party to the MFP Agreement's Fourth Amendment. It, therefore, unequivocally could invoke the arbitration provision to arbitrate disputes under the arbitration provision terms. Appellees contend that Marshall and Dick could not act as Trustees of the Management Trust to invoke arbitration by the Management Trust because they had caused Tex to appoint them as trustees when he lacked mental capacity or unduly influenced him. Appellants dispute that this was properly raised in the trial court. We need not decide that question. Appellees were parties to the container contract with

## IV. Conclusion

We sustain Appellants' issue that the trial court abused its discretion in granting the temporary injunction and reverse the trial court's Order Granting Temporary Injunction. We dismiss for lack of jurisdiction Appellants' issue that the trial court abused its discretion in effectively denying Appellants' Amended Motion to Refer Matter to Arbitration, Plea in Abatement, and Motion for Stay. We remand the case to the trial court for proceedings consistent with this opinion.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: May 18, 2023

---

the Management Trust, with the common arbitration agreement, and Appellees' objections were defenses to the container agreement, not to the arbitration agreement. Therefore, the matter should be resolved by the arbitrator just as it should be for Marshall and Dick.

[6]Appellees contend that the trial court acted within its discretion because a trial court may grant a temporary injunction against an arbitration in process so that the trial court can decide whether pending claims involving a non-signatory are arbitrable. *Myrtle Consulting Grp., LLC v. Resulting Partners, Inc.*, No. 01-20-00095-CV, 2021 WL 2231248, at *8–10 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.) (mem. op.). This case does not apply for two reasons. First, there is nothing in the injunction order that limits the injunction to this limited purpose. Second, unlike *Myrtle Consulting*, the "non-signatories" to the Fourth Amendment (Marshall and Dick) are seeking to enforce arbitration against Appellees who were successors and who were seeking to enforce the agreement for their benefit.

24